Clyde HOOD and Leslie Shults, Trustees of the Texas American Syndicate, and W. E. Hendricks, et al., Interveners, Appellants,

v.

C. Gilbert JAMES et al., Appellees.

No. 16666.

United States Court of Appeals
Fifth Circuit.

June 26, 1958.

Rehearing Denied Aug. 11, 1958.

James U. Thurman, Dallas, Tex., Leo Brewster, Fort Worth, Tex., W. B. Harrell, Dallas, Tex., Brewster, Pannell, Leeton & Dean, Fort Worth, Tex., for appellants.

Charles S. Hopkins, Olean, N. Y., Owen F. Renegar, Oklahoma City, Okl., J. Hart Willis, C. A. Mattay, Robert A. Neathery, Dallas, Tex., Code E. Edwards, Fort Worth, Tex., John B. Stigall, Jr., Dallas, Tex., for appellees.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment removing Clyde Hood and Leslie Shults as Trustees of the Texas American Syndicate and appointing three other trustees,

with instructions that they operate under orders of the court and not under the trust indenture and that they look toward an ultimate liquidation of the Syndicate in "the form of a sale or sale in part and incorporation as may be determined." The district court wisely suspended the operation of that judgment until the termination of this appeal. Three other appeals have reached this Court from judgments and orders of the district court involving the Texas American Syndicate.[1]

For an understanding of the questions now presented, we re-state some of the facts. The Texas American Syndicate is a "Massachusetts Trust"[2] created by an indenture executed on March 15, 1922, by H. H. Tucker, Jr., to himself as sole trustee, and twice amended. The Syndicate owns more than sixty-one thousand acres of ranch land in Crane, Pecos and Brewster Counties and small tracts in other counties, all in Texas. Much of that land has proved to be rich in oil and natural gas. Mr. Hood, one of the present trustees, testified on the hearing before the district court that a conservative value of the properties of the Syndicate would be around $750,000.00, and that its only substantial indebtedness was approximately $10,000.00 owed to the State of Texas for some land purchased. Some of the terms of the trust were set forth by the district court in the order or judgment from which this appeal is prosecuted:

"The said declaration of trust contained among other provisions the following:

"'This conveyance and assignment is made in trust, however, for the following purposes:

"'(a) To create a trust estate to be known and designated as the Texas American Syndicate subject to the following conditions:

"'(1) That H. H. Tucker shall be the sole trustee of the said estate, and

"'(2) That said estate shall have an authorized capitalization of Nine Hundred Thousand ($900,000.00) Dollars, divided into Nine Hundred Thousand (900,000) shares or units of the par value of One (1.00) Dollar each * * *

"'And said trustee is expressly authorized to bring or defend any such suits in his discretion and to compromise or settle said suit, claim or controversy in which said trust estate is interested, as to him may seem best * * *'

"'That the right of the said trustee to manage, control and administer said trust estate shall be absolute and unconditional, free from the control and management of the shareholders.'

"* * * 'The legal title of such estate shall be vested in said trustee and said certificate shall be personal property of the owner thereof, as shown by the books of the trustee, and neither said owner, nor his heirs, or personal representative at his death, shall have any legal title to said trust estate or any part thereof, or interest therein, or the

1. See Tucker v. Texas American Snydicate, 5 Cir., 1948, 170 F.2d 939; Tucker v. Baker, 5 Cir., 1950, 185 F.2d 863; Tucker v. Baker, 5 Cir., 1954, 214 F.2d 627.

2. "The 'Massachusetts Trust' is a form of business organization, common in that State, consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property is divided. These certificates, which resemble certificates for shares of stock in a corporation and are issued and transferred in like manner, entitle the holders to share ratably in the income of the property, and, upon termination of the trust, in the proceeds." Hecht v. Malley, 1924, 265 U.S. 144, 146–147, 44 S.Ct. 462, 463, 68 L.Ed. 949.

right to partition the same or to an accounting, but only to receive the income or proceeds thereof.'

"* * * 'Said trust estate shall not be compelled to pay any profit or dividends to said shareholders unless the trustee in the exercise of his sound discretion elects so to do.'

" 'That this trust estate shall continue and remain in force for the term of one hundred years * *.' "

The trust estate continued under the control of its original trustee, H. H. Tucker, Jr., until 1934 when it was placed in receivership in the District Court of Parker County, Texas. The opinion on the first appeal of that proceeding shows that the suit was a class action prosecuted for the benefit of all of the shareholders of the trust. Looney v. Doss, Tex.Civ.App.1945, 189 S.W.2d 207.

During the course of that receivership, some of the shareholders petitioned the trial court to order a liquidation of the Syndicate on the ground that, while paragraph XIII of the trust indenture provided that the shareholders "shall not be liable for any indebtedness or liability of the said trust estate," they had discovered that in law and in fact they were liable as partners. The trial court held the Syndicate to be a partnership and ordered it dissolved. That judgment was reversed by the Court of Civil Appeals in Looney v. Wing, 1946, 195 S.W.2d 557, though that court confirmed the view that the shareholders are liable as partners for the debts of the trust. The court quoted with approval from Burnett v. Smith, Tex.Civ.App., 240 S.W. 1007, 1009:

" 'To finally dissolve the association, wind up its affairs, and distribute its assets would be to go counter to the plain terms of that contract which is binding upon the plaintiffs and all other stockholders, even though it should be held to constitute in law a partnership in its relation to creditors. In order for the plaintiff to escape the binding terms of that contract, and for the entire business to be terminated, and that, too, in the absence of any showing that other stockholders desired that to be done, a very clear showing should be made, to say the least.' " Looney v. Wing, supra, 195 S.W.2d 557, 562.

That state court receivership was finally terminated in 1946 and the Syndicate properties were delivered over to Karl Crowley as the duly elected successor trustee of the Syndicate.

About ten months thereafter, on October 31, 1947, Crowley as such trustee filed a voluntary reorganization petition under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The district court granted the relief requested, and appointed Crowley as trustee in bankruptcy and he took possession of the Syndicate properties in that capacity. Upon his death, Herbert H. Thaxton was substituted as the trustee in bankruptcy. Upon appeal, this Court ruled that the Syndicate was not insolvent and that the petition had not been filed in good faith. Tucker v. Texas American Syndicate, 5 Cir., 1948, 170 F.2d 939.

After reversal, efforts to amend the petition in that case, No. 2163 in Bankruptcy, were unsuccessful and a new suit in equity, Civil Action No. 1855, was filed by a number of shareholders. The district court ordered the two cases consolidated; ordered Thaxton, who had theretofore been appointed trustee, to continue to administer the properties under the order of the court; appointed a master to take testimony and report to the court on the beneficial ownership of the assets of the trust; and stayed proceedings in a number of state court cases. This Court, upon appeal, dissolved the order staying proceedings in the state court cases, and affirmed the judgment of the district court in other respects. Tucker v. Baker, 5 Cir., 1950, 185 F.2d 863.

Thereafter, the master, appointed to conduct hearings for the purpose of determining who were the beneficial owners of the Syndicate, reported his findings of fact and conclusions of law to

which numerous objections were made. The district court overruled those objections and confirmed the master's report. Upon appeal, all parts of the district court's judgment except the appointment of a receiver were affirmed, and the judgment appointing a receiver was reversed with directions to vacate the receivership. Tucker v. Baker, 5 Cir., 1954, 214 F.2d 627.

This Court, however, adhered to its holding, implicit on the former appeal, that since the district court had assumed possession of the properties in the bankruptcy proceeding, subsequently dismissed, it had jurisdiction to conserve those properties and to determine their ownership and the persons to whom they should rightfully be delivered. The opinion concluded with the admonition:

> "* * * that this slow paced, slow moving proceeding be as economically and as speedily as possible brought to an end in a winding up order closing the administration and delivering the properties and their management to the person or persons rightfully entitled thereto."

Tucker v. Baker, supra, 214 F.2d 627, 632.

After receiving this Court's mandate, the district court discharged Thaxton as Receiver and appointed him as Conservator. It further appointed Clyde Hood as election judge and proctor to hold an election by the shareholders for the selection of a successor indenture trustee. After a short while, Hood reported to the court that a fair election could not be held "within the time period set by the court or any reasonable time thereafter," and:

> "It is the considered opinion of your Special Master that it would require a minimum of twenty-four to thirty-six months of detailed examination, instruction and effort in order to procure the necessary evidence of qualification of heirs or other representatives of deceased shareholders so that an election representing the real views, desires and wishes of those owning the equitable interests in the authorized shares of Texas American Syndicate with respect to the selection of a Trustee or Trustees could be determined."

Thereafter, under date of February 28, 1955, all of the active interested parties in the two consolidated cases entered into a written settlement agreement, most of the substance of which is quoted in the margin.[3] The parties jointly moved the court to approve the settlement agreement and to appoint "Leslie Shults, Clyde

---

3.
"1.
"Parties hereto are of the opinion that an election of a Trustee or Trustees of the Texas American Syndicate, which has been ordered by said Court by Order entered in said consolidated causes on December 9, 1954, cannot be conducted so as to elect a Trustee or Trustees who could qualify under the terms of the Trust Indenture of said Syndicate.
"2.
"Said parties being further desirous of settling said litigation and having the Syndicate placed in the hands of Trustees who can effectively develop the properties of the Syndicate for the benefit of these parties and all those having an interest in the Syndicate, agree, upon the conditions and for the covenants hereinafter stated, to present to the Court their joint Motion that the Court invoke its equity powers and appoint as Co-Trustees of the Texas American Syndicate, Leslie Shults and Clyde Hood of

Dallas, Texas, and Herbert H. Thaxton of Fort Worth, Texas, each to receive one-third ($1/3$) of the commissions provided for the Trustee under the terms of the Trust Indenture of said Syndicate.
"3.
"It is further agreed that since all the matters in controversy in the hereinafter named State Court suits are compromised and hereby settled, that such suits be dismissed, with prejudice, namely: * * * (Six suits were listed and described)."
Paragraph 4 provided for the settlement of the claims of H. H. Tucker, Jr. and his wife, Nellie M. Tucker, and the establishment of the amount of their ownership of Syndicate stock.
Paragraphs 5, 7 and 8 settled various other claims.
"6.
"The undersigned parties further agree that upon the appointment of said Trustees, they shall have full authority to

Hood and Herbert H. Thaxton, to act under the terms of the Trust Indenture of said Syndicate, with all of the powers, duties, rights and privileges therein provided." On March 8, 1955, the court entered its Order providing in part as follows:

"There was duly presented to the Court the written objection of Raymond S. Ruemper and the Court having read and considered the same is of the opinion that such objection goes to the provision of paragraph 9 of the contract and agreement heretofore filed herein and the Court, having taken into consideration the findings of fact and conclusions of law heretofore filed herein by the Special Master which were approved by this Court and affirmed on appeal by the United States Court of Appeals for the Fifth Circuit and being of the opinion that such finds (sic) of fact and conclusions of law are controlling with respect to such matter and further having examined such agreement and specifically with respect to paragraph 9 interprets such paragraph 9 to mean that such trustees shall have the internal administrative power of determining conflicting interests between the parties which will be subject to review at the request of any dissatisfied person by action taken before any Court of competent jurisdiction.

"It Is Ordered that the objection of the said Raymond S. Ruemper be in all things overruled.

"There being no other objections to the joint motion of J. Morgan Baker, et al. filed herein on February 4, 1955 moving this Court to exercise its equity powers to appoint trustees of the Texas American Syndicate, the Court having considered such motion, re-examined the agreement filed herein on the 28th day of February, 1955 with respect thereto

control, manage and operate the properties of Texas American Syndicate, as such powers are given in the Trust Indenture of said Syndicate, and that said Trustees shall do all further necessary acts to complete this Settlement Agreement, so as to accomplish the results intended hereby.

"It is further agreed that the jurisdiction of the District Court be retained for the sole and only purpose of the payment of fees and expenses incurred to date in these proceedings, and that the Trustees shall be given full authority to immediately begin the operation, management and control of the Syndicate properties, and collect all sums now due the Syndicate.

"9.

"It is further specifically agreed that any conflicting interest of the owners of the Syndicate as to their respective rights among themselves and proportionate ownership of the Syndicate, be left to the determination of the Trustees, to be determined upon the merits of each case and the values of the certificates of ownership in the Syndicate, as shown by the terms of such instruments."

Paragraphs 10 and 11 are omitted in the interest of brevity.

"12.

"It is further agreed between the parties hereto that upon the appointment of the above named Trustees, that a majority of said Trustees shall constitute a quorum for transacting any and all business of the Syndicate, and may enter into and execute such contracts, deeds, leases, releases, mortgages and other instruments which they may deem necessary and proper for carrying on the business of the Syndicate, and that the action of such majority shall be fully binding upon the Syndicate the same as if all of the Trustees had unanimously concurred in such action.

"13.

"All parties hereto further agree that they will, in the future, execute such other and further instruments as may be necessary to properly and effectively carry out the intent and purposes of this agreement.

"14.

"This agreement is executed by the undersigned with the express understanding and agreement that it shall become effective only in case that the Court enter its Order appointing said Trustees, with the powers as outlined hereinabove, and upon the further condition that this agreement shall be null and void and of no effect if such Order is not entered."

constituting a proposed settlement agreement, the interim report of the Special Master filed herein on February 3, 1955, together with the record and proceedings heretofore had in these causes and is of the opinion that for the various reasons set forth in the Special Master Interim Report it would be a practical impossibility to conduct an election for the election of an indenture trustee pursuant to the provisions of the trust indenture and amendments thereto controlling the Texas American Syndicate within the time limit set by the Court or any other reasonable time;

"That delay in the selection of such trustee or trustees adversely affects and impairs such syndicate and its property and assets, that the proposed settlement agreement filed herein is fair, equitable and substantially protects the rights of all persons having an interest in the Texas American Syndicate, its assets and properties and that the joint motion of J. Morgan Baker, et al. should be granted.

"It Is Ordered that the settlement and contract agreement dated the 28th day of February, 1955 and filed herein on such date be and the same is in all things ratified, confirmed and approved.

\* \* \* \* \* \*

"It Is Further Ordered that Leslie Shults and Clyde Hood of Dallas, Texas, and Herbert H. Thaxton of Fort Worth, Texas, be and they are hereby appointed as co-trustees of the Texas American Syndicate to have all of the powers, privileges, rights, duties and obligations as provided in the trust indenture, together with all amendments thereto creating and controlling such Texas American Syndicate and such three named co-trustees are hereby authorized and directed to forthwith take into their possession all of the properties of the Texas American Syndicate and all of the books and records thereof and further to collect all sums of money or other properties now due such Texas American Syndicate with full power and authority to operate, manage and control the properties, assets and affairs of the Texas American Syndicate including, but not limiting thereby, the generality of the foregoing, the power and authority to execute division orders for the release of suspended pipeline funds, execute oil and gas leases or other conveyances of Syndicate properties, all free and clear of any further order or direction of this Court.

"It Is Further Ordered that Herbert H. Thaxton, Trustee and Conservator herein be and he is hereby ordered and directed to turn over to the said Leslie Shults, Clyde Hood and Herbert H. Thaxton as co-trustees of Texas American Syndicate all of the properties and assets and all books and records of said Syndicate in his possession and receive from such co-trustees a detailed receipt therefor and report back to this Court on or before April 1, 1955 rendering a final account showing such turnover, together with the receipt therefor and detailed account of the condition of the estate as of the date of such turnover and a hearing upon such final account and final discharge of such trustees and conservator is hereby set for Friday, April 8, 1955, at 10 o'clock in the forenoon in the United States District Courtroom at Dallas, Texas.

"It Is Further Ordered that any and all persons claiming a right to compensation for services rendered in these proceedings or for any other administration charges shall file their applications therefor in writing in this Court on or before the 1st day of April 1955; and a hearing on such petitions is hereby set for the 8th day of April, A.D. 1955 at 10:00

o'clock in the forenoon in the United States District Courtroom at Dallas, Texas.

"It Is Further Ordered that this Court retains jurisdiction of the assets and properties of Texas American Syndicate for all purposes until the entry of a final decree herein setting fees and discharging the trustee and conservator.

"Entered at Fort Worth, Texas, this the 8 day of March, 1955.

"T. Whitfield Davidson,
"United States District Judge."

Two months later, on May 11th, 1955, the district court entered a further order as follows:

"This the 11th day of May, 1955, the Court having completed consideration of the final account of the Trustee and Conservator, Herbert H. Thaxton heretofore filed herein and reviewed the receipt received by such Trustee and Conservator from Clyde G. Hood, Leslie Shults and Herbert H. Thaxton, Trustees of Texas American Syndicate is of the opinion that such final report and receipt is in proper form and constitute a proper accounting of his administration:

"It Is Therefore Ordered, Adjudged and Decreed by the Court that such report of said Herbert H. Thaxton be and the same is hereby approved and ordered filed as part of the record of this case and that the said Herbert H. Thaxton is hereby discharged from all further duty or liability in these proceedings as Trustee and Conservator and that the bond given by the said Trustee and Conservator for the faithful discharge of his duties, be iti (sic) is hereby canceled.

"It appearing to the Court that all matters in these proceedings have been completed and all assets turned over to the trustees:

"It is Further Ordered, Adjudged and Decreed that these proceedings be and they are hereby finally closed.

"It Is Further Ordered that all Unpaid Court costs be and they are hereby taxed against the assets and estate of the Texas American Syndicate, and its Trustees, to-wit, Clyde G. Hood, Leslie Shults and Herbert H. Thaxton are hereby ordered to pay such to the Clerk of this Court upon proper tender of a statement therefor.

"Entered at Fort Worth, Texas, this 11 day of May, 1955.

"T. Whitfield Davidson,
"Judge United States District Court."

All three trustees qualified and acted for more than a year, though there were frequent disagreements between Thaxton and the other two trustees. On July 10, 1956, Thaxton resigned as trustee and on the same date the present suit was filed. It would appear that, with the order of May 11, 1955, the caretaker jurisdiction made necessary by the court's possession of the Syndicate's assets under the abortive bankruptcy petition filed in 1947 had at long last been relinquished. The present suit sought to have the court reassume jurisdiction on the basis of diversity of citizenship.

There are approximately 6436 persons who own interests in the Texas American Syndicate. Of these, 128 were listed as plaintiffs in the original complaint in the present suit. An amendment added a list of 1558 shareholders. More intervened on both sides of the controversy, with some suggesting other forms of relief. In addition to praying that the court itself appoint a proper officer or trustee to manage and conserve the assets of the Syndicate under the orders of the court, the complaint prayed that the court appoint an officer to conduct an election among the shareholders upon two propositions:

"1. Shall the Texas American Syndicate be transformed to a corporation.

"2. Twelve (12) trustees and directors be elected from the stockholders group from a list to be

nominated by the stockholders, and that the mechanics and operation of said election be directed by the officer of the Court, subject at all times to supervision by the Court until completed."

The general basis for the relief sought was that the trust indenture creating the Syndicate was unworkable and required the court to invoke its equity powers "to properly carry out proper management, and a right and just distribution of the properties." The suit was not for enforcement of the trust indenture or of any of its provisions. Instead, the ultimate end sought was the dissolution of the Syndicate and its reorganization into

a corporation. None of the usual grounds of equitable jurisdiction, such as misrepresentation or mistake in the making of the contract at a time more than thirty-four years before the filing of the complaint, or fraud or mismanagement of the properties, were relied on. Such charges of fraud as were made or intimated were dropped after an audit made by an outside certified public accountant showed the affairs of the trust to have been economically operated.[4]

Hood and Shults have continued to act as trustees. They have been harmonious. Each is under a $50,000.00 fidelity bond payable to the trust. Their combined compensation has been 3% of

---

4. That fairly appears from the lengthy colloquy between court and counsel:

"Mr. Brewster: In connection with the proof we will offer it will shorten it a good deal if we understand whether or not there is any claim by anybody that the present trustees are guilty of any mismanagement or neglect of duty or anything of that nature.

"Mr. Renegar, do you claim there is any mismanagement or neglect of duty on the part of the trustee?

"Mr. Renegar: We do not believe and have not charged anything that would be detrimental. In other words, we are willing that the present trustees go until this matter is adjudicated, but we do think many things have operated in a slow manner, but we do not think there has been any dereliction of duty in doing the business. We are not insisting a special officer be appointed but we are willing they continue, together with another trustee that the Court may appoint, until this matter is arrived at.

"The Court: At any rate, you are agreeable to let the record show that there is no charge of mismanagement or corruption in the trustees' management?

"Mr. Renegar: That is right.

"Mr. Neathery: The Interveners' position is that there has been in this litigation a waste of trust funds.

"The Court: I know what you are going to say. I will incorporate that in my paragraph in my finding, that there is no dereliction of duty.

"In other words, your position is that the litigation has ensued and will continue to ensue, in your judgment, under the Massachusetts Trust and will result in losses to the estate?

"Mr. Neathery: Yes, sir, such as in Fort Worth, kicking out Mr. Thaxton, on his resigning.

\* \* \* \* \*

"Mr. Brewster: Anybody else representing any intervener?

"We want to show by the trustees that we still have a large part of the shareholders who are not in Court, unless they are in by representation as a class.

"Now, there has been some discussion here, and I think I understand what is meant by the statement of the three gentlemen, Mr. Renegar, Mr. Neathery and Mr. Mattay, about the question of the conduct of these trustees, Hood and Shults.

"If I understand it correctly, the meaning of what has been stated in the record is that these trustees have done the best they could under the trust agreement, and whatever is lacking is the workability of the trust.

"The Court: I think it would be better to state that no one charges any mismanagement or corruption or neglect against the trustees.

"Mr. Neathery: That is correct.

"Mr. Mattay: We haven't changed that in our pleadings. I believe it was changed in either Mr. Hopkins' or Mr. Nelson's pleading, and I feel duty bound to say I believe their pleadings have charged something to that effect, but not affecting their honesty or anything like that.

"The Court: The Court will find against it if it is in there.

"Mr. Mattay: We don't charge it at all.

"Mr. Brewster: Do you intend to offer any evidence in support of any allegations against the present trustees?

"Mr. Mattay: No, sir."

the income, as provided by the trust agreement. The Syndicate business has been operated with the employment of only two women, one a clerk and the other a stenographer.

It may be that, if the Syndicate had proved totally unworkable, a court of equity would have jurisdiction to liquidate its properties. The facts appearing of record in this case, however, affirmatively prove the contrary. Not only is the Syndicate now being operated honestly, economically and at a profit; but its properties are conservatively valued at $750,000.00, while its only substantial indebtedness amounts to about $10,000.00. Obviously, under such circumstances, there is no jurisdiction under the bankruptcy Act to reorganize the Syndicate. Federal jurisdiction must affirmatively appear. Of course, no court has jurisdiction simply to re-write a contract at the behest of dissident parties, or to convert their trust indenture into a corporation in the absence of practically unanimous consent.

The plaintiffs' attorney admitted that he represented with the same general authority many Texas shareholders and many who were residents of other states. He purposely omitted the Texas shareholders from the complaint so as to create diversity. Every shareholder is vitally interested, if not indeed indispensable, to a suit of this nature which seeks to amend or terminate the trust indenture. The Texas shareholders had the same interest as those residing outside Texas. They could be just as conveniently joined. It was not impracticable to join them. They should not be remitted to class representation under Rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A. See 3 Moore's Federal Practice, Paragraph 23.05, p. 3420. Their joinder would have defeated federal jurisdiction.

We have every confidence in the learned district judge, and we know that he is actuated by the best of intentions, and that he sincerely sees the opportunity and duty to protect the small individual investor shareholders by orders of the court. Reluctantly, we must disagree with him, and hold that the order of May 11, 1955 fully and finally relinquished the court's caretaker jurisdiction; and that, if not already clear, the facts developed upon the hearing in the present suit showed that the court did not, either by the original or amended complaints, or by any of the several interventions, acquire any diversity jurisdiction of the parties or of the subject matter. The judgment is, therefore, reversed and judgment here rendered dismissing the complaint and amendments thereto and the interventions filed subsequent to May 11, 1955.

Reversed and rendered.