**Bill S. WEATHERFORD, Plaintiff,**

v.

**Oscar L. ELIZONDO, M.D., M. E. Malakoff, M.D., and Mercy Hospital of Laredo, Defendants.**

**Civ. A. No. 70–L–42.**

United States District Court,
S. D. Texas,
Laredo Division.

Jan. 22, 1971.

James D. Cunningham, Odessa, Tex., and Richard Tinsman, San Antonio, Tex., for plaintiff.

Groce, Hebdon, Fahey & Smith, Josh H. Groce and Thomas H. Sharp, Jr., San Antonio, Tex., and Mann, Castillon, Freed & Kazen, Carlos Castillon, Laredo, Tex., for defendants Elizondo and Malakoff.

Lewin Plunkett, San Antonio, Tex., and Oscar Pena, Laredo, Tex., for defendant Mercy Hospital.

MEMORANDUM AND ORDER:

CONNALLY, Chief Judge.

This is a diversity action, filed by the husband alone, to recover for the personal injuries sustained by the wife. The plaintiff, William S. Weatherford, alleges that he is a citizen of New Mexico. The three defendants are M. E. Malakoff, M. D., a citizen of Texas and a practicing physician in Laredo, Webb County, Texas, within this district and division; Oscar L. Elizondo, M. D., a citizen of Mexico but a resident and practicing physician in Laredo; and Mercy Hospital of Laredo, a corporate citizen of Texas, conducting its business in Laredo.

By motion the defendants raise the question as to the indispensability of the wife, Nadine Weatherford, as a party plaintiff. As will be noted from the evidence discussed more fully hereafter, I find that at the institution of the suit she was, and is, a citizen of Texas. The question arises by reason of the enactment in 1967 of certain Texas statutes, to be hereafter discussed. The question is an interesting one, it calls in question the constitutionality (under the Texas constitution) of such statutes; and it is of first impression.

At an evidentiary hearing on the issue of citizenship of the parties, and jurisdiction of the court, held November 10, 1970, the following facts were developed. Both William and his wife, Nadine, were raised in Laredo, Texas, where their parents still reside. William completed high school in Laredo in 1964, following which he spent two years on active duty with the United States Navy. In 1966 he returned to Laredo and attended junior college in that city for one year. During this interval, he became acquainted with Nadine.

In 1967 William removed his residence (and, I find, his citizenship) to the State of California where he took employment. In the summer of 1968 Nadine came to California where she and William were married July 6, 1968. They lived as husband and wife in California for a matter of approximately five months, at which time Nadine returned to Laredo to be with her parents and her family doctor (Dr. Malakoff) prior to the expected birth of a child. William returned to Laredo in January, 1969. The baby was

born February 19, 1969. The baby was healthy and normal in all respects.

During the course of the delivery, however, Nadine suffered a cardiac arrest. After heart action was restored, it was found that she had suffered serious and permanent brain damage. Since that date she has been confined to a bed or wheelchair; has been unable to speak; and is completely non compos mentis. Since this tragedy Nadine has lived in the home of her parents in Laredo and has been cared for and supported by them.

Following the birth, William remained in Laredo for some 13 months. He secured employment and, as time permitted, resumed his junior college training. I find that both he and Nadine re-acquired citizenship as well as residence in this state during this interval.

In February, 1970, William left Texas and took up residence in New Mexico. He resided for a few weeks in Albuquerque, and for a few months in Santa Fe. In the summer of 1970 ultimately he moved to Madrid, New Mexico, which he described as a "ghost town". There he maintains a prospering business of making candles, which he sells both retail and wholesale. He likewise has contracted an adulterous and illicit relation with one Martha Holloway, who resides with him, in his residence, at Madrid.

While William made some meager contribution to Nadine's expenses immediately following the birth of the child, he has not contributed to her support in the slightest since April, 1969. As stated, she has lived with and been supported and maintained entirely by her parents, a situation which prevailed at the time William moved to New Mexico. His only return to Texas (save for the hearing in question) was in March, 1970, when he assumed custody of the child and took her to New Mexico where she now resides with him under the circumstances mentioned above. I find that William's departure from Texas under these circumstances constituted a deser-

tion and abandonment of his wife. See, Ritch v. Ritch, 242 S.W.2d 210 (Tex.Civ. App.—Dallas 1951, no writ); Griffith v. State, 141 Tex.Crim. 482, 148 S.W.2d 429 (1941). See also, Michael v. Michael, 34 Tex.Civ.App. 630, 79 S.W. 74 (1904, no writ); Montmorency v. Montmorency, 139 S.W. 1168 (Tex.Civ.App.—El Paso 1911, err. ref.). Thus, at the time of the institution of this action (March 17, 1970), he was a citizen of New Mexico, and she of the State of Texas.

Thus it will be observed that if Nadine is an indispensable party to the action, the complete diversity of citizenship required will not be present. On the other hand, if the plaintiff husband, acting alone, may maintain the action, then diversity is present. This unquestionably was the law in Texas prior to 1968 and until enactment of the statutes hereafter discussed. Ezell v. Dodson, 60 Tex. 331 (1883); Galveston H. & S. A. Ry. Co. v. Baumgarten, 31 Tex.Civ.App. 253, 72 S.W. 78 (1903, err. ref.); Northern Texas Traction v. Hill, 297 S.W. 778 (Tex.Civ.App.—El Paso 1927, err. ref.); Pacific Greyhound Lines v. Tuck, 217 S.W.2d 699 (Tex.Civ.App.—El Paso 1948, err. ref. n r. e.); Johnson v. Daniel Lumber Co., 249 S.W.2d 658 (Tex. Civ.App.—Beaumont 1952, err. ref'd); Ellis v. San Antonio, 341 S.W.2d 508 (Tex.Civ.App.—San Antonio 1960, err. ref. n. r. e.); Galarza v. Union Bus Lines, Inc., 38 F.R.D. 401 (S.D.Texas, 1965), aff. 369 F.2d 402 (5th Cir. 1966); Connell v. Rosales, 419 S.W.2d 673 (Tex. Civ.App.—Texarkana 1967, no writ).

Bearing in mind that the injury to Mrs. Weatherford occurred February 19, 1969, and that this action was filed March 17, 1970, the Texas statutes calling for interpretation, and their effective dates, are as follows:

Article 4615, Vernon's Annotated Civil Statutes, as amended 1967 (eff. Jan. 1, 1968), and in effect at the time of the accident, read as follows:

"The recovery awarded for personal injuries sustained by either spouse dur-

ing a marriage shall be the separate property of that spouse except for any recovery and loss of earning capacity during marriage."

While this statute was repealed by the 1970 Family Code, V.T.C.A., effective January 1, 1970, the essence was carried forward as Section 5.01(a) (3) of that Code, the entire section reading as follows:

"*Section 5.01. Marital Property Characterized*

(a) A spouse's separate property consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) *the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage."* (Emphasis added here, and throughout, unless the contrary is noted.)

Article 4621, Vernon's Annotated Civil Statutes, as amended in 1967 (eff. Jan. 1, 1968), and in effect at the time of the injury to Mrs. Weatherford, read as follows:

"During marriage each spouse shall have sole management, control and disposition of that community property which he or she would have owned if a single person, including (but not limited to) his or her personal earnings, the revenues from his or her separate property, *the recovery for personal injuries awarded to him or her,* \* \* \*".

This section likewise was repealed, but carried forward in the 1970 Family Code as Section 5.22(a) (3):

"*§ 5.22. Community Property: General Rules*

(a) During marriage, each spouse has the sole management, control, and disposition of the community property that he or she would have owned if single, including but not limited to:

(1) personal earnings;

(2) revenue from separate property;

(3) *recoveries for personal injuries;* and

(4) the increase and mutations of, and the revenues from, all property subject to his or her sole management, control, and disposition.

(b) \* \* \*"

Section 15 of Article 16 of the Constitution of the State of Texas, Vernon's Ann.St. (by reason of which it is suggested the foregoing statutes may be unconstitutional, in whole or in part), reads as follows:

"All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired after by gift, devise, or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband. Laws shall also be passed providing for the registration of the wife's separate property."

This identical provision similarly is found in the Texas Constitutions of 1845, 1861, and 1866.

In interpreting these statutes—enacted by a Legislature undertaking to enlarge the power of the married woman to own and control property, and to loosen the restraints and disabilities under which she labored by reason of

coverture under Common Law concepts [1] —I note the most striking analogy to the interpretation given by the Supreme Court of Texas in 1925 to somewhat similar legislation enacted by the Texas Legislature a few years prior thereto. The decision to which I refer is that of Arnold v. Leonard,[2] a truly landmark decision in Texas jurisprudence, which has been cited and followed innumerable times. The analogy is such that I think it appropriate to commend a reading of that opinion at this time, and to discuss it, and the context in which it arose.

In Arnold v. Leonard a judgment creditor of a husband sought to levy on certain property, being the rents and revenues from real estate which constituted the separate property of the wife. She undertook to enjoin the levy under terms of certain Acts of the Legislature of Texas of 1913, 1917, and 1921 (cited fully in the opinion), which Acts collectively undertook to add certain classes of property to the classification of the wife's separate property as set out in the Constitution and to extend her right to manage and control her separate and portions of the community property. The Acts of the Legislature in question provided that the wife's separate property should consist not only of the constitutional classifications [(a) that owned or claimed by her before marriage, and (b) that acquired afterward by gift, devise or descent], but as well of the rents and revenues from her sep-

arate property, her personal earnings, dividends on stocks and interest on bonds and notes belonging to her, etc.; the Acts exempted such property from debts contracted by the husband; and committed such classes of property to the control, management, and disposition of the wife alone. The Supreme Court of Texas after a full review of the constitutional and legislative history of the Acts in question held that the classification of the separate property of the wife, as set out in the Constitution, was exclusive, and might not be enlarged or decreased by legislative enactment. The Court held further, however, that the provisions exempting such property from debts of the husband, and committing same to the exclusive control, management and disposition of the wife, were valid Acts of the Legislature, passed pursuant to the constitutional mandate contained in Section 15 of Article 16 that the Legislature pass laws more clearly defining the rights of the wife in relation to her separate as well as community property. The holding is epitomized in the following quotation (p. 805 of 273 S.W.):

"The sum of our conclusions is: The Legislature, in defining the wife's rights in and to her separate property and property held in common with her husband, could lawfully deprive the husband of the power granted him for many years to manage and control the wife's separate property and

---

1. For somewhat similar statutes, perhaps the result of the "Women's Liberation Movement", see:

   (1) Art. 1299. Acts 1897, p. 41; G.L. vol. 10, p. 1095. Repealed by Acts 1963, 58th Leg., p. 1189, ch. 473, § 1. Eff. Aug. 23, 1963. Wife's separate (privy) acknowledgment no longer required for validity of non-homestead, separate property conveyance. But see 414 S.W. 454 (Tex.Sup.Ct.1967) denying writ in Diamond v. Borenstein and holding wife's privy acknowledgment still required for *recordation* and notice under Arts. 6605 and 6608.

(2) Arts. 6605 and 6608. Repealed by Acts 1967, 60th Leg., p. 735, ch. 309, § 6. Eff. Jan. 1, 1968.

(3) Art. 4626. Acts 1963, 58th Leg., p. 1188, ch. 472, § 6. Repealed by Acts 1969, 61st Leg., p. 2707, ch. 888, § 6. Eff. Jan. 1, 1970. Present Tex.Family Code Ann. § 4.04 (Supp.1969). Allowed wife to sue and be sued without joinder of the husband.

(4) Art. 5535. Tex.Rev.Civ.Stat.Ann. (Supp.1970). Removed the disability of coverture in the running of limitations in personal actions.

2. 114 Tex. 535, 273 S.W. 799 (1925).

portions of the community property which were derived from use of the wife's separate property or from her personal exertions, and could confide the management, control, and disposition thereof to the wife alone, and could exempt, not only her separate property, but said portion of the community from payment of the husband's debts. In making this grant of enlarged rights to the wife, and working the corresponding diminution in rights to be exercised by the husband, the Legislature was lawfully defending the wife's rights in both her separate estate and common property, as expressly authorized by the Constitution. But the Legislature could not divest the husband of all interest in and to property which, under the Constitution, was guaranteed either to the community or to the husband's separate estate, and use the same to enlarge the wife's separate estate beyond its constitutional limits.

"We therefore answer to the certified questions that so much of the act of 1917 and of the act of 1921 as undertook to declare the rents and revenues of the wife's separate realty to be her separate estate was violative of section 15, of article 16, and of section 35, of article 3 of the Constitution, but that the provisions of said acts, and of the prior act of 1913, are valid, which render the rents and revenues of the wife's separate lands free from liability to forced sale for the payment of debts contracted by the husband." [3]

Reverting to the 1967 statutes with which we are here concerned, it will be noted that Article 4615 (and § 5.01(a)(3) of the Family Code) undertakes again to enlarge the classification of the separate property of the wife, by including the recovery for personal injuries sustained by such spouse during the marriage. Additionally, Article 4621 (and § 5.22(a) (3) of the Family Code) vests in the wife "sole management, control and disposition of * * * the recovery for personal injuries awarded to * * * her, * * *."

Thus, by analogy to Arnold v. Leonard it may well be argued that the statute classifying the recovery for personal injuries sustained by a spouse during marriage as the separate property of such spouse is unconstitutional. As a judge of a federal court at the trial level, I am reluctant to make such holding; and content myself with suggesting that the constitutionality of this section of the statutes well might be subject to question, citing Arnold v. Leonard. But irrespective of whether such recovery, in whole or in part, constitutes separate property of the injured spouse, I have no hesitancy in holding, pursuant to the same authority, that the section committing such recovery for personal injuries to the sole management, control and disposition of the injured spouse is entirely constitutional and valid. Of considerable interest and persuasion in the consideration of these statutes is an article by Professor Joseph W. McKnight, Professor of Law, Southern Methodist University, and a member of the Family Law Section of the State Bar of Texas, the principal source of drafting, study, and research with reference to these statutes, 22 Southwestern Law Journal 129. The following is a quotation from page 132 of the article:

" * * * In Firence Footwear Co. v. Campbell (406 S.W.2d 516, Tex.Civ.

---

3. For a discussion of Arnold v. Leonard and history of the legislation there considered, see "Commentary on the Community Property Law of Texas" by William O. Huie, Professor of Law, University of Texas School of Law, page 1 of Volume 13, Vernon's Civil Statutes.

App.—Houston, 1966), it is further stated that recovery for the wife's personal injury is community property subject to the husband's control. As general propositions of pre-1968 law, both of these statements are uncontestable. But it has long been thought that there is an inherent injustice in treating the physical loss of a spouse as community property insofar as the loss is not measured by earning power during marriage. In the 1917 revision of the matrimonial property statutes the legislature attempted to achieve this just result but failed. As revised in 1967, article 4615 still provides, in effect, that recovery for lost earning power, which is commonly the principal element of a personal injury verdict, is community property. But recoveries for destruction or loss of a bodily limb, as measured by pain and suffering of the injured spouse as well as earning power lost before marriage or after the marriage is dissolved, are the separate property of the injured spouse. In addition, article 4621 provides that all types of recoveries for personal injuries are subject to the management, control and disposition of the person injured. *The provisions of article 4615, dealing with ownership of the recovery, should be clearly distinguished from the management provisions of article*

*4621. Article 4615 does not make all recoveries the separate property of the injured spouse. Article 4621, on the other hand, does give the injured spouse management, control, and disposition over all of a personal injury recovery whether such recovery is community or separate property or both. Regardless of characterization of various aspects of personal injury recoveries as separate or community property, the injured spouse has the sole power to settle a dispute as to liability because of his or her management powers.*" (Emphasis added.)

Thus I am of the view that Nadine Weatherford[4] must prosecute this suit. She may, and should, determine whether it should be tried or settled, and, if so, on what terms; and she should make every decision in a manner calculated to serve her own best interests.

The parties have cited no post-1968 case law in point. Plaintiff has been content to cite cases prior to the effective date of the statutes in question, all of which follow the then Texas rule permitting the husband to sue alone.[5] The result reached here is consistent with the only recent Texas case my own research has disclosed [Ramos v. Horton, 456 S.W.2d 565 (Tex.Civ.App.—El Paso 1970, no writ)], holding that, under the cited statutes, the wife may sue alone

---

4. Acting, no doubt, through a guardian of her estate, under supervision of the Probate Court of Webb County, Texas.

5. This is true save for three recent workmen's compensation cases cited by plaintiff: (1) General Ins. Co. of America v. Casper, 426 S.W.2d 606 (Tex.Civ.App.—Tyler, 1968), writ ref. n. r. e. per curiam 431 S.W.2d 311 (Tex.Sup.1968); (2) Travelers Ins. Co. v. Jacks, 441 S.W.2d 312 (Tex.Civ.App.—El Paso, 1969, no writ); and (3) Charter Oak Fire Ins. Co. v. Few, 456 S.W.2d 156 (Tex.Civ. App.—Tyler, 1970, writ granted). In each, the married woman sued for workmen's compensation benefits owing by rea-

son of her personal injuries. In *Casper* and in *Jacks* the wife sued alone; in *Few* the husband was joined pro forma. In each case the Court holds simply that the recovery constituted community property, and that the husband should have been a party. The statutes here in question are not cited or discussed. If these cases are correctly decided—and Professor McKnight thinks that they are not (McKnight, "Recodification and Reform of the Law of Husband and Wife", 33 Texas Bar Journal 34 (at 41) 1970)— their holding is simply that the husband should be a party, not that the wife should not be a party.

for her own personal injuries (not under the Workmen's Compensation Act) where she sought to do so. Thus this authority holds the husband is neither a necessary nor indispensable party. The opinion does not consider the question of whether the husband might maintain the suit—with or without joinder of the wife—although I believe the clear implication is that he might not. The result reached is likewise consistent with Article 4626 (now § 4.04 of the Family Code), effective since 1963, permitting the wife to sue alone, and without joinder of the husband.

It is perhaps fortuitous that in this first case, denying the husband the right to sue, the facts should be of such a compelling nature. It would indeed be an incongruous result were the law to permit this deserting husband, who has closed his eyes to every legal and moral obligation of his marital status, to prosecute this action and to make the many decisions incident thereto. William's interest is not in Nadine, but in her cause of action. She—with her reason gone and relying for support solely on the affection and charity of her own family—should maintain the action. As she is a Texas citizen, it belongs in the state court.

As Mrs. Weatherford is an indispensable party, and as she may not be joined without destroying the requisite complete diversity of citizenship [Baten v. Nona-Fletcher Mineral Co., 198 F.2d 629 (5th Cir. 1952), cert. den. 344 U.S. 864, 73 S.Ct. 104, 97 L.Ed. 670 (1952); Hood v. James, 256 F.2d 895 (5th Cir. 1958); Lang v. Colonial Pipeline Co., 383 F.2d 986 (3rd Cir. 1967); First National Bank and Trust Co. of Oklahoma City v. McKeel, 387 F.2d 741 (10th Cir. 1967)], this action is dismissed.

The clerk will furnish counsel of record with copies of this Memorandum. Counsel for the defendant will prepare an appropriate order to this effect.