Floyd C. LESTER, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. CA–1–76–54.

United States District Court, N. D. Texas, Abilene Division.

March 20, 1980.

---

Stephen H. Suttle, McMahon, Smart, Wilson, Surovik & Suttle, Abilene, Tex., for plaintiff.

Kenneth J. Mighell, U. S. Atty., Dallas, Tex., William L. Johnson, Asst. U. S. Atty., Fort Worth, Tex., for defendant.

MEMORANDUM

WOODWARD, Chief Judge.

The above case was tried before the court without a jury on the 10th day of January, 1980 with all parties present and represented by counsel. Each side submitted to the court evidence and argument with respect to their contentions in the case. After hearing and considering the evidence, the pleadings, the briefs and arguments of counsel, the court files this memorandum which shall constitute its findings of fact and conclusions of law.

This action was instituted by the plaintiff, Floyd C. Lester, individually and on behalf of the community estate of himself and his wife, Marcia M. Lester, against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), et seq., for damages resulting from the personal injuries incurred by Mrs. Lester. There are various claims for relief including: (1) a claim for personal injuries to Mrs. Lester on behalf of the community estate; (2) a claim for loss of Mrs. Lester's earning capacity on behalf of the community estate; (3) a claim for Mr. Lester's loss of consortium; (4) a claim for future medical expense; and (5) a claim for loss of past and future earnings for Mr. Lester.

■ Floyd C. Lester and Marcia M. Lester were married on September 6, 1965 and have remained married until this date. Mr. Lester is a native of Abilene, Taylor County, Texas and his mother and father reside there now. Mr. and Mrs. Lester presently live in Abilene and lived there at the time of the filing of this litigation. Moreover, at all times pertinent hereto they have intended to live in and claim as their domicile and residence Abilene, Taylor County, Texas. It is for these reasons that this court holds that the marital domicile of Mr. and Mrs. Lester is Texas and has been throughout their marriage despite their travels while Mr. Lester was in the United States Navy.

Mr. Lester entered into the United States Navy in October of 1959 and at the time of Mrs. Lester's injury he was assigned to the United States Naval Base on Guam in the Marianas Islands. Mrs. Lester had accompanied him to his duty station and they lived in an apartment owned and operated by the United States Navy on the base where Mr. Lester was stationed. The apartment was rented and the rent was duly paid by Mr. and Mrs. Lester for their occupancy of same. This particular apartment was located below the street and a flight of steps on a grassy hillside led down to the front of the apartment building from the street. This flight of steps in front of the Lester apartment was under the control of the United States Navy.

The flight of steps was not equipped with a handrail, had no non-slip strips on its surface, was at a steep angle, and because of the composite concrete material used in constructing the steps, they were extremely slippery when wet. As a matter of fact, other persons had fallen on similar steps which were constructed in an identical manner in front of other apartments on the base and notice had been given to the Navy of these instances. Moreover, the flight of steps leading down to the Lester apartment was the only reasonable means of access to or egress from the apartment.

In May or June of 1972 Mrs. Lester was descending the steps in question, carrying two bags of groceries, and during the period of time when the steps were wet from a rain shower. While descending these steps she slipped and fell and was severely injured. At the time of this fall Mrs. Lester had no other means of access to her apartment which was less dangerous and there was no intelligent choice of other routes for her to take. Additionally, on the occasion in question Mrs. Lester was exercising all due and ordinary care for her own safety under the circumstances then and there prevailing.

■ The court has been directed to the laws of Guam for the determination whether the defendant is liable for any negligent acts and is of the opinion that the negligence laws of Guam do apply in this case. The most significant contacts in this action point to the application of Guam law. The plaintiff was temporarily residing in Guam

at an installation maintained by the defendant and in the opinion of this court the location of the accident was not simply fortuitous.

■ Under Guam law there is a specific statute that deals with responsibility for negligence. Section 1714 of the Guam Civil Code states:

> Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned by another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has willfully brought the injury upon himself.

*Guam Civ.Code* § 1714. The measure of damages is governed by section 3333 of the Guam Civil Code which states:

> For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could be anticipated or not.

*Guam Civ.Code* § 3333.

Guided by these laws and by what this court believes to be their proper application, this court finds that the defendant, acting through the United States Navy, was negligent in the following particulars and each of these acts of negligence was a proximate cause of the accident and the resulting injuries to Mrs. Lester and of the damages awarded to the plaintiff:

a) By the exercise of ordinary care, which the Navy failed to use, it could have discovered the dangerous condition and the unreasonable risk involved to those using the steps in question, and in failing to make the condition of such steps safe for those using them.

b) The United States Navy failed to exercise ordinary care in the construction of the steps in front of the Lester apartment in that they were not equipped with a handrail or non-slip strips on the surface of the steps.

c) Further the United States Navy failed to exercise ordinary care in maintaining the steps in front of the Lester apartment without such a handrail or a non-slip strip on the surface of the steps.

d) As Mrs. Lester was exercising ordinary care for her own safety under these circumstances and had no intelligent choice of any other routes to take to her apartment, she was not guilty of any contributory negligence.

As indicated, Mrs. Lester incurred serious injuries. After the fall she managed to get inside of her apartment where she remained unattended until discovered by neighbors at least a few hours and maybe a few days later. At the time they discovered her, she was in a dehydrated, malnourished condition and unable to speak. At the time of the accident Mr. Lester was not on the naval base at Guam but had been temporarily assigned to sea duty in the Philippine Islands.

On June 11, 1972, when Mrs. Lester was discovered by the neighbors, she was taken to the naval hospital on Guam and was unable to speak coherently and a provisional diagnosis of schizophrenia or organic disorder was made. While in the hospital on Guam, bleeding was observed from her right ear and in her spinal fluid and she had temporary paralysis, headaches, and seizures with continuing inability to speak. Later, on June 29, 1972 she was transported to the Tripler General Hospital in Honololu, Hawaii where a diagnosis of subdural hematoma was made. This hematoma was surgically removed in July of 1972.

After recovery from the surgery, Mrs. Lester was treated by enrollment in a speech therapy program and did regain some partial speech. In the years following this surgery in 1972 Mrs. Lester has experienced grand mal seizures and has had prescribed daily medications such as dilantin and valium to at least partially control the frequency of such seizures and the frequency has been less and less in the ensuing years.

Mrs. Lester is still laboring under a difficulty in expressing herself and although there has been improvement since the date of the accident, she is still unable to use

certain words or to express certain thoughts that are necessary in everyday conversation. It appears that after this length of time the impediment and loss of ability is permanent. Mrs. Lester has been treated to date by the United States of America in hospitals in Guam and in Hawaii and up until this day at the Dyess Air Force Base near Abilene, Texas. It is fair to say that her injuries have caused her severe pain and mental anguish.

■ Previously Mr. and Mrs. Lester filed a complaint in this court against the United States of America in Cause Number CA–1–75–13 but the case was dismissed for lack of jurisdiction on the ground that no administrative claim had been filed with the Department of the Navy as required by the Federal Tort Claims Act. On May 15, 1975 such an administrative claim on the United States Government Form 95 was duly filed with the Department of the Navy claiming damages in the amount of $510,000.00. The Department of the Navy, after receiving this administrative claim form, took no action or made any response and after six months had elapsed after the receipt of the claim by the United States Navy this case was filed on October 4, 1976.

At this time the defendant complains about the sufficiency of the administrative claim. While the defendant does not dispute that a claim was filed, it questions the sufficiency of the claim and contends it is insufficient under the Federal Tort Claims Act. In substance, what was actually filed was a Form 95 which made reference to the complaint that was filed in CA–1–75–13 and which was attached to the back of the form. This court believes this procedure to be unorthodox but sufficient to comply with the administrative claim provisions of the Federal Tort Claims Act. *See, Locke v. United States,* 351 F.Supp. 185, 188 (D.C. Hawaii 1972).

The defendant also contends that the two year statute of limitations under 28 U.S.C. § 2401(b) bars this cause of action. The plaintiff asserts that the action is not barred, however, by virtue of the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.App. §§ 501, *et seq.* The plaintiff contends that he is entitled to the benefits of the Act because he was in the active military service until October 28, 1975 and that during that time the statute of limitations was tolled.

■ The Soldiers' and Sailors' Civil Relief Act (Act) was enacted in 1940 to protect the civil rights of individuals employed in the United States Armed Services. *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 681 (1956). It has the dual purpose of allowing servicemen to avoid the distractions of civil litigation while they are discharging their military duties and also of protecting the rights of individuals having causes of action against members of the armed forces. *Ricard v. Birch,* 529 F.2d 214, 216 (4th Cir. 1975). One of the most significant provisions of the Act is the tolling provision found in section 525. Section 525 provides:

> The period of military service shall not be included in computing any period . . to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court . . . by or against any person in military service . . . whether . . . such action or proceeding shall have accrued prior to or during the period of such service.

The tolling provision has been found applicable in a variety of circumstances, most notably in actions based on claims against the United States. *See Diamond v. United States,* 344 F.2d 703, 706, 170 Ct.Cl. 166 (1965). The defendant contends, however, that the tolling provisions of the Act are not applicable to suits brought under the Federal Tort Claims Act with the applicable two year statute of limitations found in 28 U.S.C. § 2401(b). The court disagrees with this contention and believes that the language of the Act is very specific. The period of military service is not to be included in the computing of any period for the bringing of *any* action by or against any person in the military service. To contend that the Act does not apply in actions brought under the Federal Tort Claims Act would be to defeat its remedial purposes. Accordingly, this court finds that the tolling

provision of the Act is applicable in this action to the benefit of individuals protected by the Act.

█ Of material importance in this action is who is protected by the Act. Not all individuals are protected by the benefit of the tolling provision of the Act and hence, not all causes of action are tolled by the tolling provision of the Act. In this action there are various claims, some of which were brought on behalf of Mr. Lester individually and others on behalf of the community estate of Mr. and Mrs. Lester. Each will be dealt with separately below. Additionally, it is important to note at this time that even though this court is of the opinion that Guam law applies to the liability issue in this action, the community property laws of Texas apply to any award of damages. The marital domicile of the Lesters is Texas and therefore any recovery they might gain would be governed by the Texas marital property laws.

█ Generally, only persons in the military service or persons having causes of action against such persons are entitled to the benefits of the tolling provision of the Act. *Ray v. Porter,* 464 F.2d 452, 455 (6th Cir. 1972). It is clear that the wife of a serviceman is not entitled to the benefits of the Act. *Wanner v. Glen Ellen Corp.,* 373 F.Supp. 983, 986 (D.Vt.1974). In *Card v. American Brands Corp.,* 401 F.Supp. 1186, 1187 (S.D.N.Y.1975), a case very similar factually to the case at bar the court held that the Act tolled the running of the applicable statute of limitations for a serviceman's causes of action for personal injuries and loss of consortium but not for his wife's causes of action. This ruling was made despite the fact that the two had been injured in the same accident and had brought the action as joint plaintiffs.

While this analysis is instructive it is not dispositive in this action. Mrs. Lester has not brought suit in this cause and is not a party seeking the benefits of the Act. Rather, Mr. Lester has brought a cause of action for damages for her injury on behalf of the community estate. Because Texas community property laws treat the kinds of recovery sought in this case differently they must be treated separately.

█ Mr. Lester has made a claim for Mrs. Lester's damages for personal injuries on behalf of the community estate. The court does not believe that the community estate is entitled to any damages in that regard because such a recovery would not be community property. The recovery for personal injuries of either spouse is the separate property of that spouse. *Graham v. Franco,* 488 S.W.2d 390, 396 (Tex.1972); *Tex.Fam.Code Ann.* § 5.01(a)(3) (Vernon 1975). Accordingly the court is of the opinion that Mr. Lester may not bring an action on behalf of the community estate for the recovery of Mrs. Lester's personal injuries.

█ The most difficult question before this court is whether Mr. Lester may bring this suit on behalf of the community estate to recover the lost earnings of Mrs. Lester. Under the Texas Family Code any recovery for lost earning capacity during marriage is community property. *Smith v. Smith,* 473 S.W.2d 299, 302 (Tex.Civ.App.—Texarkana 1971), *writ ref'd n. r. e. per curiam,* 478 S.W.2d 81 (Tex.1972); *Tex.Fam.Code Ann.* § 5.01 (Vernon 1975). This type of community property is characterized, however, as sole management community or · special community and is under the sole management and control of the spouse who is entitled to recover for such interest. This distinction between ownership and management has put this court in a quandary concerning the rights of Mr. Lester. Mrs. Lester the spouse with the management and control of this property is not a party here and cannot be because her claim would be barred by the statute of limitations. The question before the court therefore is whether in Texas a spouse may bring an action on behalf of the community estate to recover the sole management community property of the other spouse.

In *Few v. Charter Oak Fire Insurance Co.,* 463 S.W.2d 424, 427 (Tex.1971), the Texas Supreme Court held that a wife could bring a suit to recover property considered to be her sole management community

property without the joinder of her husband. In that suit the Texas court considered the husband to be a proper party to the action but not an indispensable one since the recovery would be the wife's sole management community property. *Id.* at 427. This opinion was in contrast to the prior law in Texas before the enactment of the Texas Family Code. Under the prior law not only were damages for personal injury as well as lost earning capacity and lost earnings of the wife community property, but also, the husband could sue alone for their recovery. *Texas & Pacific Railway v. Leatherman,* 351 S.W.2d 633, 634 (Tex.Civ. App.—Eastland 1961, *writ ref'd n. r. e.*); *Roberts v. Magnolia Petroleum Co.,* 142 S.W.2d 315, 317 (Tex.Civ.App.—San Antonio 1940, *writ ref'd*). Were this still the law in Texas this court would have little trouble in finding that Mr. Lester could bring this action to recover Mrs. Lester's lost earnings and loss of earning capacity. The Family Code changed much of the prior law, however, significantly in regard to community property under the sole management and control of either spouse. *Tex. Fam.Code Ann.* § 5.22 (Vernon 1975). Certainly the Texas legislature did not anticipate the fact situation now before this court in granting to the wife her just and fair share of the management and control of community property but this court must decide if the legislature intended to deprive the husband in all circumstances of bringing a suit to recover the wife's sole management community property.

▄▄▄ In *Weatherford v. Elizondo,* 52 F.R.D. 122 (S.D.Tex.1971), the court was called on to consider a similar case to the one at bar. In *Elizondo,* the husband was attempting to bring an action for recovery of his wife's personal injuries, presumably bodily injuries and lost earnings. The suit was a diversity action in which the husband was a citizen of New Mexico and the wife was a citizen of Texas along with several of the defendants. The defendants, citizens of Texas by motion raised the question whether the wife was an indispensable party to the action. If she was, diversity was destroyed and the action would be dismissed.

The court found that she was an indispensable party to an action to recover for her own personal injuries and dismissed the suit. The court disclosed that it had no solid precedent to base its opinion on and simply ruled that the clear implication from the granting of the wife the power to sue for her own personal injuries without the joinder of the husband, was that the husband could not maintain the suit on his own. *Id.* at 129. This court is in agreement with this ruling especially in view of decisions holding that the wife has the sole right to manage, control and dispose of her causes of action to recover damages for personal injuries, including injury to the physical structure of the body and lost earning. *See Myers v. Thomas,* 502 S.W.2d 941, 943 (Tex.Civ.App.—Beaumont 1973, *no writ*); *Jamail v. Thomas,* 481 S.W.2d 485, 489 (Tex.Civ.App.—Houston [1st Dist.] 1972, *writ ref'd n. r. e.*). Moreover, this court is of the opinion that in the absence of evidence showing authority, the mere relationship of husband and wife does not give the power to either spouse to bring suit for the other spouse's sole management community property and that accordingly Mrs. Lester had the sole power to bring an action for her sole management community property because of her management power. Further, since Mrs. Lester is not a party to this action and would be barred by the statute of limitations if she was, the claim for her lost earning capacity is denied.

▄▄▄ This court must also consider the claim for future medical expenses. Recovery for medical expenses is considered to be community property in Texas. *Graham v. Franco,* 488 S.W.2d 390, 396 (Tex.1972). This court need not decide, however, if Mr. Lester may recover for any medical expenses because of the absence of evidence to support the claim. The only evidence of any future medical expenses is that it is expected that Mrs. Lester will continue to need to take dilantin. No evidence was submitted of the quantity required or the cost of this drug. As such this court is of the opinion that it may not speculate regarding this amount and therefore denies any recovery for future medical expenses.

 Mr. Lester also has made a claim for loss of consortium. In Texas it is now clear that either spouse has a cause of action for loss of consortium that may arise as a result of injury caused to the other spouse by a third party's negligence. *Whittlesey v. Miller,* 572 S.W.2d 665, 668 (Tex.1978). Such a claim is considered to be separate property. *Id.* at 669. Further, the court in *Card v. American Brands Corp.,* 401 F.Supp. 1186, 1188 (S.D.N.Y.1975), faced with a similar claim for loss of consortium held that such a claim could be recovered by a sailor seeking the benefits of the tolling provision of the Act. Accordingly, in consideration of the evidence submitted at trial, this court awards to Mr. Lester $50,000.00 for his loss of consortium.

Mr. Lester also has made a claim for lost earnings including reduced retirement benefits. Specifically, Mr. Lester claims that he was forced to retire early from the United States Navy in order to care for his wife. Immediately prior to his retirement Mr. Lester had been stationed in Abilene, Texas where he was living with his wife but had been reassigned to sea duty. It is Mr. Lester's contention that this assignment caused him to make the decision to retire. The record reflects that Mr. Lester stated that he intended to remain in the Navy for an additional period so that he could receive retirement benefits commensurate with a thirty-year term of service. The record shows, however, that Mr. Lester retired in October of 1975 and received retirement benefits based on a twenty-two year term of service. Plaintiff's Exhibit 5 indicates that the difference in retirement pay amounts to $324.00 a month. In all, Mr. Lester claims lost retirement benefits of $83,064.00 which this court considers to be a correct figure. In lost earnings Mr. Lester has claimed $59,210.00 in future and past earnings. This court does not consider this figure of past and future lost earnings to be a correct figure and believes it should be reduced by $36,048.00, the amount of retirement benefits received or to be received during the years in which lost earnings are claimed. This reduction leaves $23,162.00 as the amount the court believes to be the correct figure for past and future lost earnings. Accordingly, Mr. Lester is entitled to $106,226.00 in lost earnings and reduced retirement benefits if this injury was proximately caused by the negligence of the Navy and the present cash market value of the loss of earnings and reduction of retirement benefits, both in the past and in the future is $75,000.00. This court does not, however, find that Mr. Lester's loss of earnings and reduction of retirement benefits was proximately caused by the Navy's negligence in this case. The injury to Mr. Lester in this regard is far too remote from the negligence in this suit and although it may have influenced Mr. Lester's decision to retire early from the Navy, it in no way was a proximate cause of these injuries.

Accordingly, judgment will be entered in compliance with the above.