(87 App. Div. 335.)

ALLEN v. CORN EXCH. BANK.

(Supreme Court, Appellate Division, First Department.   November 13, 1903.)

1. DRAFT—CO-PAYEES—TRANSFER—NECESSITY OF INDORSEMENT BY BOTH.
    A draft payable to two payees, who are not partners, must bear the indorsement of each to convey complete title, and the indorsement of one in the names of both is, in the absence of extraneous authority, insufficient.

2. SAME—RATIFICATION OF INDORSEMENT BY ONE—JURY QUESTION.
    Evidence in an action by one payee in a draft against the indorsee of his co-payee to recover his share of the proceeds *held* to require submission to the jury of the question of plaintiff's ratification of his co-payee's indorsement and personal realization of the proceeds.

8. SAME—SUIT AGAINST INDORSEE—ABANDONMENT BY SUIT AGAINST CO-PAYEE'S REPRESENTATIVE.
    Bringing an action against the personal representative of a co-payee in a draft to recover one's share of the proceeds is not an election and abandonment of a prior action against the co-payee's indorsee for the same relief.

4. SAME—ORIGINAL AUTHORIZATION.
    Two brothers sold real estate owned by them, and executed an escrow agreement, requiring a first payment to be forwarded to them, and subsequent payments to be deposited to their credit.   One brother, knowing that the other had received the 'first payment, consented to an extension of time to the purchaser.   He subsequently received part of the proceeds of the sale, and did not question his brother's indorsements of drafts received for the purchase price for five years from the first payment and two years from the last, and not until after the brother's death. *Held*, that he was shown to have granted an original authority to his brother to indorse in the names of both, and cash, drafts made payable to both in payment of the purchase price.

5. SAME—ESTOPPEL.
    He was estopped, as against the bank cashing such drafts, to question his brother's authority to indorse them in the names of both.

6. SAME—RATIFICATION.
    The vendor of realty, who, knowing that his co-vendor has received a part payment of the purchase price, consents to an extension of time to the purchaser, thereby ratifies the act of the co-vendor in indorsing in the names of both, and cashing, drafts received for the purchase price and made payable to both, even though he was ignorant of the mode of payment.

Appeal from Trial Term, New York County.

Action by Aaron C. Allen against the Corn Exchange Bank. From a judgment for plaintiff and an order denying a new trial, defendant appeals.   Reversed.

See 59 N. Y. Supp. 1098.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

John M. Bowers, for appellant.
Herman Aaron, for respondent.

PATTERSON, J.   The plaintiff and his brother, Charles F. Allen, now deceased, were the owners of landed property in the state of

¶ 1. See Bills and Notes, vol. 7, Cent. Dig. § 435.

California. They made a contract with S. M. Buck, of that state, by which Buck was to purchase the land at a specified sum, payments to be made in various amounts at designated times. The aggregate payments were to be $65,000. The brothers made a deed of the property, which was deposited with Wells, Fargo & Co., to be held by them until Buck made the payments required by the contract. At various times, during the years 1893 and 1894 Buck paid to Wells, Fargo & Co. certain amounts on account of his purchase, which were remitted to Charles F. Allen by checks or drafts, less charges, as follows: February 16, 1893, $9,900; August 12, 1893, $2,985; November 8, 1893, $8,457.50; February 7, 1894, $5,866.83; November 8, 1894, $3,184. Four of these checks were drawn to the order of Charles F. and A. C. Allen, and the fifth to the order of Charles F. and Aaron F. Allen. Upon receiving them they were indorsed by Charles F. Allen as follows: That of February 16th, 1893, "Charles F. and A. C. Allen." "For deposit. Charles F. Allen." That of August 12, 1893, was indorsed in the same way. That of November 8, 1893, was indorsed, "For deposit. Charles F. and A. C. Allen. Charles F. Allen." That of February 7, 1894, was indorsed, "Charles F. Allen. For deposit. Charles F. and A. C. Allen." That of November 8, 1894, was indorsed, "For deposit. Charles F. and Aaron C. Allen. Charles F. Allen." All the checks, as thus indorsed, were deposited in the Corn Exchange Bank to the individual credit of Charles F. Allen, and it is not controverted that he received the benefit of the credit. Charles F. Allen died on the 30th of November, 1898, and thereafter, and about the 14th of February, 1899, this action was begun against the Corn Exchange Bank to recover one-half of the proceeds of the Wells, Fargo & Co. checks thus deposited to the credit of the individual account of Charles F. Allen. Subsequently the executors of Charles F. Allen were made parties to the action, but the present controversy is between the bank and the plaintiff.

It appeared in evidence that the plaintiff and his brother, Charles, were tenants in common of the California lands, and as such made their agreement to sell and convey them to Buck. They were not copartners. The plaintiff's claim is that the checks (or the money represented thereby) were the property of himself and Charles F. Allen, he having an equal interest therein with his brother, who, without the knowledge, consent, or authority of the plaintiff, indorsed the plaintiff's name on each of such checks, and transferred it to the defendant bank, which received the same, and collected the amount thereof; and that the plaintiff never transferred his interest in the checks to the defendant bank, and never consented to the transfer thereof, and never authorized or consented to the payment of the checks to the defendant. The plaintiff also alleges, in substance, that he did not know of the facts concerning his brother's dealing with the checks until after the death of that brother.

The first question presented for consideration arises upon the facts as thus far stated, and it may be formulated thus: Did the defendant bank acquire, by the indorsements made by Charles F. Allen, a title to the checks which would extinguish the right of the plaintiff to one-half of the moneys received by the bank on such checks?

There is nothing in this record to indicate that a copartnership relation existed between the brothers Allen in the transaction relating to the California lands, nor is it to be doubted that the checks which were received by Charles F. Allen were for moneys to which he and his brother were jointly entitled. Each was a payee of each check; and, where commercial paper is payable to two or more persons, who are not copartners, it must be indorsed by all to give good title to a transferee. In Willis v. Green, 5 Hill, 233, 40 Am. Dec. 351, the court, by Nelson, C. J., says that it is the settled commercial rule that co-payees not partners must each indorse in order to negotiate the paper; citing Chitty on Bills, 67–254 (Ed. 1840). In Foster v. Hill, 36 N. H. 526, it was held that, where a promissory note is made payable to the order of two joint payees, their joint indorsement is necessary to negotiate it. In Bennett v. McCaughy, 3 How. (Miss.) 192, 34 Am. Dec. 77, it is said that it is well settled that, where a note or bill is payable to two, it must be indorsed by both in order to convey the entire interest in it to the indorsee; citing Chitty on Bills, 67, 226. In Wood v. Wood, 16 N. J. Law, 428, it was held that one joint payee of a promissory note cannot indorse it either in his own name alone or in his own name and that of his co-payee. They are not considered partners either in the commercial or legal sense of the term. In Smith v. Whiting, 9 Mass. 334, it was held that one of two executors cannot assign a negotiable promissory note, made to them as executors, for a debt due their testator. In Ryhiner v. Feickert, 92 Ill. 305, 34 Am. Rep. 130, where a note was payable to the order of Charles and William Feickert, who were not partners, the court ruled that the note was not prima facie payable to a firm, and that the possession of one joint owner was not evidence of a partnership, and the title as against both could only pass by joint indorsement. In Daniel on Negotiable Instruments (section 684) the author says that, if several persons, not partners, are payees of a bill or note, it should be indorsed by all of them, unless it should be expressly payable to the order of either of them, or to the order of certain ones of them, in which cases their indorsement would suffice; but there is no presumption of law that one may indorse for the other. It is claimed, however, by the appellant, that it has been decided otherwise in this state, and the case of the People v. Keyser, 28 N. Y. 226, 84 Am. Dec. 338, is quoted as authority. Judge Selden remarks in that case that any one of several joint payees of a note, bond, or other personal obligation has a right to receive payment of and to discharge such obligation. But that was a case where a mortgage was made to two persons who were described as executors, and it was considered by the court that either of the mortgagees had a right to receive the money and discharge the mortgagors. So far as the statement in the opinion relates to joint payees of a note who are not partners, the authorities cited by the learned judge do not support that proposition. Pierson v. Hooker, 3 Johns. 68, 3 Am. Dec. 467, and Bulkley v. Dayton, 14 Johns. 387, are cases which did not involve a promissory note, but the releases therein held to be good were made by one co-partner; nor do Stuyvesant v. Hall, 2 Barb. Ch. 151, and Murray v. Blatchford, 1 Wend. 583, 19 Am. Dec. 537, relate to negotiable paper.

We are of the opinion that the learned judge presiding at the trial of the present case correctly held that the indorsements were insufficient to pass to the Corn Exchange Bank the interest which the plaintiff had in the money represented by the checks. But that does not dispose of the whole case. There were still involved two questions: First, whether Charles F. Allen did not have actual or implied authority from the plaintiff to receive the money paid by Buck through Wells, Fargo & Co.; and, second, if such authority did not exist, whether the plaintiff did not, with full knowledge that the payments were made, ratify the act of his brother in receiving them for and on account of himself and the plaintiff. The learned judge entertained the view that but one, question arose in the controversy, and that was submitted to the jury, namely, whether Charles F. Allen, although he was not a partner with the plaintiff, had authority from him to indorse the drafts or checks. He instructed the jury that there was no direct evidence of such authority having been conferred, but that that was not necessary if the existence of such authority could be fairly inferred from all the facts and circumstances of the case. He further instructed them that, if Charles F. Allen did have such authority, it made no difference at what particular time it was conferred. He was asked by the counsel for the defendant bank to charge that, if the jury believed the defendant's witnesses, then upon their evidence and on the uncontradicted documentary evidence in the case they could find that the plaintiff ratified the indorsements and collections of the checks involved in the case. The court declined so to charge, stating as the reason that the jury had nothing to do with ratification. The court was also asked to charge that, if the jury should find from the evidence that the plaintiff, with full knowledge of the facts, ratified the acts of Charles F. Allen, then the defendants are not liable. That request was also declined, and exceptions were duly taken. In returning their verdict for the plaintiff, the jury must necessarily have found that there was no authority at any time or in any way given to Charles F. Allen by the plaintiff to indorse the checks. The charge of the learned judge seems to have limited the question of authority in such a way as to separate it from circumstances in the case, which tended to show acquiescence of the plaintiff in what was done by his brother in receiving the remittances made by Buck through Wells, Fargo & Co. and collecting the amounts thereof. We think the inquiry was not properly limited to the single subject of authority conferred to indorse checks as an isolated act. If the plaintiff, with full knowledge that his brother had received the remittances, and of the manner in which those remittances were made, rested supinely for years without objecting to the course pursued with respect to those remittances, the jury might well have been justified in finding that he acquiesced in all his brother had done with respect to them, and that he was content with the existing condition of the matter, although authority to indorse the checks had not been given. There was enough in the proofs to require the submission of this subject to the jury. Ratification means the adoption of an unauthorized act; and acquiescence, although it may not in itself be ratification, is nevertheless evidence of it. What are the facts, then, from which

the jury might have found that the acts of Charles F. Allen were ratified? The plaintiff knew that all the correspondence and all negotiations, extending over several years, had with Mr. Buck concerning the land, were conducted by his brother alone, and that payments were made on account of the purchase. The plaintiff himself does not appear to have taken any part whatever in the transactions. The whole matter, in all its details, was confided to Charles F. Allen. The plaintiff knew that Charles had received the amount of the first payment required under the contract with Buck, namely, the sum of $10,000, less charges. He admits that he knew it in one of the letters he wrote to his brother. The plaintiff also knew that his brother was receiving moneys on account of Buck's contract, and in one of his letters he instructed Charles to get out of Buck all he could on account, and that, if Buck failed "to carry out the contract to the letter, put on the screws." The plaintiff also knew that various extensions of time within which to make some of the payments under the contract had been given to Buck, and he knew of negotiations between Charles and Buck with reference to these extensions, for a letter and telegram from Buck to Charles had been sent to the plaintiff, and had been returned by him to Charles. Again, in 1894, Charles paid the plaintiff $3,000, which was part of the moneys received by Charles F. Allen on this California transaction with Buck. After the death of Charles an arrangement was made between the plaintiff and the widow of Charles with Buck and one Palmtag, by which new relations were established and new interests created in the California land. That arrangement is contained in a written agreement executed in January, 1899, in which it is recited that, in consideration of moneys paid to and of legal services performed for the parties of the first part thereto (Adelaide G. Allen, widow of Charles F. Allen, and Aaron C. Allen) and other considerations, Buck and Palmtag were to have certain interests in the property, and all agreements theretofore made between the parties, or their predecessors in interest, relating to the land, were superseded by the agreement. The plaintiff knew at that time what moneys had been paid to Charles. In a letter written by him on the 14th of January, 1899, he refers to the fact that Buck had invested over $36,000 in these lands, and the information concerning the amount paid by Buck on account of the purchase was contained in a letter written by Buck to the plaintiff on January 5, 1899, inclosing an account.

From all this and much other evidence the jury could have found that the plaintiff ratified and adopted all that had been done by his brother, Charles, in the realization by him personally of the proceeds of the sale of the California lands.

It also appeared in evidence that the plaintiff has brought an action against the executor of Charles F. Allen to recover one-half of the moneys received from Buck. That action was not brought until some months after the one at bar was instituted. We think that it cannot be successfully claimed that that was an election to sue Charles F. Allen's executor and to abandon this action. But, on the whole case, we are of the opinion that it should have gone to the jury on the evidence as to ratification.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event.

VAN BRUNT, P. J., and HATCH and LAUGHLIN, JJ., concur.

INGRAHAM, J. I concur in the reversal of this judgment upon the ground that upon the evidence the plaintiff must be considered as having authorized his brother, Charles F. Allen, in common. On the 16th day of January, 1893, Charles F. Allen and the plaintiff executed a deed of conveyance of the property in question, and this deed was transmitted on January 17, 1893, by Charles F. Allen, to Wells, Fargo & Co., subject to an escrow agreement, a copy of which was inclosed. That escrow agreement, dated January 17, 1893, provided that the purchaser must deposit with Wells, Fargo & Co. the sum of $10,000 on receipt of said deed in escrow, the said sum to be forwarded "to us [Charles F. Allen and A. C. Allen] at once," and that within 90 days thereafter the purchaser must deposit with Wells, Fargo & Co. "to our credit the further sum of $55,000, together with interest." This agreement was executed by Charles F. Allen and the plaintiff, and also by the purchaser, who thereby agreed to make the purchase upon the terms set forth. This deed and these instruments were received by Wells, Fargo & Co., and transmitted to California, and the sum of $10,000 was paid to them by the purchaser, a check for which, dated February 16, 1893, for the sum of $9,900, was sent by Wells, Fargo & Co. to Charles F. Allen. That check was payable to the order of Charles F. Allen and A. C. Allen, was indorsed "Charles F. & A. C. Allen," and was collected by Charles F. Allen. The first $10,000 that was paid under this agreement as a consideration for this purchase was thus received by Charles F. Allen from Wells, Fargo & Co., the agent appointed by the parties to the deed to receive the money for them, on February 16, 1893. On the 29th of June, 1893, by an agreement between Charles F. Allen and A. C. Allen, of the first part, and the purchaser, of the second part, the agreement as to the payment of the consideration for the premises was amended, the purchaser agreeing to pay to Charles F. Allen and A. C. Allen $15,000 on the 1st of November, 1893, and $40,000 on the 1st of November, 1894, these two payments being described in the instrument as "the balance due of said purchase money as required by the terms of said escrow agreement of January 17, 1893, together with interest at the rate of eight per cent. per annum"; and on July 14, 1893, the plaintiff wrote to his brother, stating: "I would advise that you write Buck to execute the last agreements as sent, pay what he can on August 1st, and that we will agree to then extend the time to November 1st for whatever balance of the $15,000 remaining unpaid."

From these agreements it conclusively appears that the plaintiff understood that the first $10,000 had been paid, and that the payment of the balance, amounting in all to $55,000, which, by the original agreement, was to be paid within 90 days after the receipt of the deed in escrow, was postponed. With knowledge of the fact that the first $10,000 had been paid, he extends the time for the payment of the remainder, and it is conceded that he subsequently received from his

brother $3,000 on·account of the purchase money that had been paid by the purchaser. Considering the situation, it seems to me clear that the plaintiff authorized his brother to act for him in the transaction in forwarding the deed and in receiving the consideration to be paid therefor. It was not a ratification, but an original authority to Charles F. Allen to conduct the transaction for both tenants in common, and to receive the consideration paid for a conveyance of the property. Charles F. Allen is dead, and we are deprived of his testimony as to the relation which existed between himself and his brother. The first check was received by Charles F. Allen on February 16, 1893, and the last check was received on November 18, 1896, and no claim was made against Charles F. Allen during all that period down to his death on the 30th of September, 1898. I think that upon the uncontradicted evidence the authority of Charles F. Allen to receive the purchase money for this property was sufficient to justify him in making the indorsement, and that as to third parties who accepted the indorsement and acted upon the faith of it the plaintiff is estopped from claiming that Charles F. Allen had no authority to receive the consideration for this property, and that for that reason the defendant bank's motion for a verdict should have been granted. If, however, there is any doubt about this, I think that there is a complete ratification by the plaintiff of the act of the defendant in obtaining the money paid by the purchaser for this property. The plaintiff proceeds upon the theory that he must, before he can ratify, have had knowledge of the fact that the money was paid by these checks drawn to the order of Charles F. and A. C. Allen; but that, I conceive, is not necessary. To ratify these payments, he must have had knowledge of the fact that the money had been paid to Charles F. Allen; and, if he ratified the payment of the money to Charles F. Allen, the form that that payment took was not material. That he had knowledge that Charles F. Allen had received a portion of the money is clear, and with that knowledge he executed these agreements, extending the time of payment of the balance due. I think this was a formal ratification of the act of the purchaser in paying to Charles F. Allen the moneys that had been paid.

For these reasons I think the defendant was entitled to the direction of a verdict, and I therefore concur in the reversal of the judgment.

VAN BRUNT, P. J., and HATCH, J., concur.