**Joseph D. JAMAIL, Appellant,**

**v.**

**James Richard THOMAS et al., Appellees.**

**No. 15882.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 20, 1972.

Rehearing Denied May 25, 1972.

Second Rehearing Denied June 15, 1972.

Jamail & Gano, Don Barnett, Houston, for appellant.

Fulbright, Crooker & Jaworski, William H. Young, Houston, for appellees.

BELL, Chief Justice.

Appellant, an attorney, filed suit against appellees, Aetna Life & Casualty Company, Norman Chersky, Ronald Easley and James Richard Thomas, to recover damages for tortious interference with a contract of employment. The court, based on a jury verdict, rendered a judgment that appellant take nothing. Easley and Chersky were claim adjusters for Aetna.

On September 15, 1968, an automobile driven by James Richard Thomas hit the automobile owned and driven by Tommy Cochran. There was a rear end collision. The Cochrans' automobile was also occupied by Mrs. Cochran and a small child of the Cochrans. The next day Mrs. Cochran, who was injured, was taken to a hospital where she remained about three weeks. At the time Mr. and Mrs. Cochran were separated and a divorce suit was pending. They later became reconciled and a divorce was never granted. On September 16, Mr. Cochran went to appellant's office and talked to Mr. Barnett, an associate of appellant. At that time Cochran employed appellant as an attorney. The power of attorney was signed by Tommy Cochran only. It purported to employ ap-

pellant to represent the Cochrans in "my (our) claim for damages against all responsible parties because of our injuries and damages . . ." The contract was a contingent fee one and assigned to appellant a 40% interest in "my (our) cause of action" if suit was filed and recovery was finally had without an appeal.

Aetna, Mr. Thomas' insurer, on January 6, 1969, made a settlement with Mr. and Mrs. Cochran and took a release signed by both of them. The release recited a total payment of $6,675.27. Its clear language effected a release by Mr. and Mrs. Cochran of any claims they had by reason of the collision.

In February, 1969, appellant filed suit against Thomas on behalf of Mr. and Mrs. Cochran. That petition is not in the record. Sometime after appellant learned of the settlement and release the suit was dismissed.

Appellant then filed this suit to recover his damages allegedly resulting from tortious interference by the appellees with his contract of employment. He went to trial on his Third Amended Original Petition. In the petition he alleged that "Thomas was guilty of negligence which proximately caused the collision . . . and resulting in injuries and damages to Mr. and Mrs. Tommy Cochran . . ." Then followed a specification of the acts of negligence.

In the paragraph alleging injuries appellant asserted that in the collision Mrs. Cochran received injuries to her neck which caused her disability to such an extent that she could not carry on her duties as a housewife and the injuries caused her physical pain and mental anguish. It was alleged that Mrs. Cochran was hospitalized and that Mr. and Mrs. Cochran incurred medical bills.

Appellant then alleges he "was employed to represent Mr. and Mrs. Cochran in their claim for damages arising out of the collision . . ." Appellant then asserts he

filed suit in their behalf for recovery "for their losses and physical pain, mental suffering, impairment of the duties of a housewife and medical bills . . ."

In his prayer appellant asked to recover 40% of the amount which probably would have been awarded to Mr. and Mrs. Cochran, or, alternatively, asked for 40% of the amount actually paid to Mr. and Mrs. Cochran by Aetna. Exemplary damages of $5,000.00 were asked.

The evidence shows that Mrs. Cochran received a neck injury and was hospitalized about three weeks. She was off from her work longer than that. Mr. Cochran was not injured. His automobile was damaged but the cost of repairs is not shown. The amount of the doctors' and hospital bills is not shown.

It appears that immediately Mr. Chersky contacted Mrs. Cochran at the hospital. Aetna determined their insured was probably liable. Aetna ascertained the net weekly earnings of Mrs. Cochran from her employment were $60.00 and started paying $120.00 per week. Some of the drafts were payable to Mr. and Mrs. Cochran and some to "Claimant." About January 6, 1969, a settlement was agreed on by Mrs. Cochran. A final payment of $4,820.00 was made. The check with a release was sent to Mr. and Mrs. Cochran. The release was to be signed by both Mr. and Mrs. Cochran and the check was payable to both. When the release was not timely returned, Aetna stopped payment on the check. Mr. Easley then took a release to the Cochran home and obtained the signature of both parties and then paid them $4,820.00. The total payment directly to the Cochrans including weekly payments was $6,675.27.

We feel the evidence conclusively establishes that Aetna, through Chersky and Easley, had knowledge of appellant's employment by Mr. Cochran. They nevertheless continued their negotiations with Mrs. Cochran. They never negotiated with Mr. Cochran except to obtain signing of the release. While Mrs. Cochran did not sign

the contract she knew of it. An issue was raised by the evidence as to whether she ratified it.

The jury, in response to special issues, made, in effect, the following answers:

1. Issue No. 1. Failed to find that Mrs. Cochran ratified the contract.

2. Special Issue No. 2. Failed to find that Aetna through its representatives knowingly interfered with performance of the contract by securing the signing of the release by Tommy Cochran.

3. Issue No. 3. Failed to find that Aetna through its representatives knowingly interfered with performance of the contract by securing of the signing of the release by Mrs. Cochran.

Issue 4 was conditioned on an affirmative answer to Issue No. 2, and inquired as to whether Aetna acted with conscious indifference to the rights of appellant. Issue No. 6 was the compensatory damage issue and was conditioned on an affirmative answer to Issue No. 2. Issue No. 8 was the exemplary damage issue and was conditioned on an affirmative answer to Issue No. 4. These issues were unanswered because of the manner in which they were conditioned. All of these issues relate to recovery based on the conduct of Aetna insofar as Aetna allegedly interfered with the contractual relation between appellant and Mr. Cochran.

The other issues relate to the contractual relation between appellant and Mrs. Cochran. Specific notice of them is unnecessary in the light of the jury's failure to find ratification.

We are of the view that the terms of the contract are broad enough to encompass all of the damages resulting to both Mr. and Mrs. Cochran. We are also of the view that the release was effective to release all claims for all damages.

Appellant by his first four points of error asserts it was conclusively established that there was tortious interference with performance by obtaining the release from Mr. and Mrs. Cochran, and the trial court erred in rendering judgment against appellant and in refusing to grant appellant's motion for judgment notwithstanding the verdict, his motion for instructed verdict and his motion for new trial.

A reference to the motion for instructed verdict and for judgment notwithstanding the verdict reveals that appellant's theory was that the contract was between Mr. and Mrs. Cochran and him in that Mr. Cochran had contracted for himself and Mrs. Cochran with authority of Mrs. Cochran. This was also the theory plead.

■■■ There is no evidence showing actual authority and the mere relationship of husband and wife does not give the husband authority to contract with regard to the wife's separate property or community property committed by law to her sole management, control and right of disposition. Taylor v. Gilbert Gertner Enterprises, 466 S.W.2d 337 (Tex.Civ.App.–Houston, 1st), ref., n. r. e. The husband could not assign the wife's interest in her cause of action.

Appellees urge that all recovery by the wife for personal injury, except loss of earning capacity during the marriage, is her separate property under Article 4615, Vernon's Ann.Civ.St., which was in effect at the time the injuries were received. This article is now Section 5.01 of the Texas Family Code, V.T.C.A. Also, appellees cite Smith v. Smith, 473 S.W.2d 299 (Tex.Civ.App.–Texarkana), ref., n. r. e.; Kirkpatrick v. Hurst, 472 S.W.2d 295 (Tex.Civ.App.–Texarkana) writ granted on another point.

We need not determine whether Aetna's payments directly to Mr. and Mrs. Cochran were her separate property.

As we read the record the payments made directly to the Cochrans were for damages for injuries received by Mrs. Cochran, including lost earnings up to the time of the release and in the future, if any, and physical pain and mental anguish. The record

is confusing as to whether payment of hospital and doctors' bills was made directly to the creditor or was included in the payment to the Cochrans. In our view it makes no difference in the light of our holding.

■ Article 4621, V.A.T.S., in effect at all material times (now Section 5.22 Texas Family Code), read as follows:

"During marriage each spouse shall have sole management, control and disposition of that *community property which he or she would have owned if a single person* (emphasis ours unless otherwise stated), including (but not limited to) . . . the recoveries for personal injuries awarded to him or her . . . "

The effect of this statute is to define the rights of each spouse with regard to community property. It does not deal with what constitutes separate property. It suffices to say that Article 4615 makes a recovery for personal injuries by a spouse his or her separate property except for loss of earning capacity during the marriage.

In the landmark case of Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799, our Supreme Court held that Article 16, Section 15, Texas Constitution, Vernon's Ann.St., permitted the legislature to pass laws more clearly defining the wife's rights with regard to her separate property as well as that held in common with her husband.

The Texas cases cited by appellee, that we have above noticed, all deal with recovery by the wife for physical injury to the body, physical pain and mental anguish and damages for such injuries were held to be her separate property. The case of Franco et ux. v. Graham, 470 S.W.2d 429 (Tex.Civ.App.–Corpus Christi), writ granted, held the same and the opinion contained a statement that medical expenses were not included as an element of recovery as separate property under the term "the recovery awarded for personal injuries."

■ We hold that by virtue of Article 4621, the wife has the sole right to manage, control and dispose of her cause of action to recover damages for personal injuries which would clearly include injury to the physical structure of the body, physical pain, mental anguish, loss of earnings and impaired earning capacity. We also hold that under the facts of this case Mrs. Cochran had sole management, control and right of disposition of recovery for hospital and medical bills.

Whether the term "the recovery for personal injuries" standing alone includes such consequential damages as hospital and medical bills, we need not decide. Article 4621 gave "sole management, control, and disposition of that community property that" the husband or wife "would have owned if single." All of the items of recovery above listed would belong to the injured wife, if she had been single. She would be liable for hospital and medical bills either because of her contract or because of necessaries furnished. She would, were she single, own any recovery for them.

Professor Joseph W. McKnight, writing in 22 Southwestern Law Journal, at page 132, reaches the following conclusion:

" . . . article 4621 provides that *all types* of recoveries for personal injuries are subject to the management, control and disposition of the person injured. The provisions of article 4615, dealing with ownership of the recovery, should be clearly distinguished from the management provisions of article 4621 . . Article 4621 . . . does give the injured spouse management, control, and disposition over all of a personal injury recovery whether such recovery is community or separate or both. Regardless of characterization of various aspects of personal injury recoveries as separate or community property, *the injured spouse has the sole power to settle a dispute as to liability because of his or her management powers. . . .* "

In the case of Weatherford v. Elizondo, 52 F.R.D. 122, the Honorable Ben Connally, District Judge, held that by virtue of the management powers conferred by Section 5.22 Texas Family Code (old Article 4621) to the injured spouse over personal injury recoveries, an injured wife was an indispensable party to a suit brought by the husband.

Appellant objected to the form of the definition of ratification accompanying Special Issue No. 1. The complaint is that the use of the term "full knowledge" places an undue burden on him.

■ We are of the view that ratification of an agreement or act requires that a party alleged to have ratified it have full knowledge of all the facts. 2 Tex.Jur.2d, Agency, Section 88.

■ It is urged that the court erred in not including "acquiescence" in the definition of ratification and in refusing to give appellant's requested definition. There was no error. Appellant's requested definition was not substantially correct. Further, acquiescence is merely evidence of ratification. Austin v. Jones, 148 Ala. 659, 41 So. 408; Allen v. Corn Exchange Bank, 87 App.Div. 335, 84 N.Y.S. 1001. The definition given read: "By the term ratified . . . is meant the approval by act, word, or conduct, with full knowledge of the facts, of the prior act, with the intention of giving validity to such prior act." This definition is correct.

Points not specifically discussed have, in the light of our above holdings, become immaterial.

Affirmed.

## ON MOTION FOR REHEARING

■ The appellant urges the fact that the checks were payable to both Mr. and Mrs. Cochran created a presumption that each was entitled to receive one-half. We are unable to agree. The pleadings and proof were that all injuries were to Mrs. Cochran. Appellant sought damages for tortious interference with a contract with Mr. and Mrs. Cochran. She did not make or ratify said contract.

The burden of proof was on the appellant to establish that included in the payments made were damages over which Mr. Cochran had control and also the amount thereof. This he has failed to do.

Motion overruled.

COLEMAN, Justice (concurring).

This court has correctly overruled appellant's motion for rehearing of its judgment affirming the judgment of the trial court. Appellant proved a tortious interference with his employment contract, but he failed to produce any evidence from which the trial court could determine the amount of damage resulting to him by reason thereof. He did not show the amount of money paid to his client in settlement of the claim. The fact that the checks issued in settlement of the claim by the insurance company were made payable to both Mr. and Mrs. Cochran is evidence of payment of a consideration to both parties, but, in view of the pleadings and evidence in this case, the issuance of the checks payable to two payees does not establish that each payee received, or was entitled to receive, fifty per cent of the proceeds of the checks. There is no other evidence pertinent to the issue of damage, an issue on which appellant had the burden of proof. The judgment of the trial court was properly affirmed for the reason that appellant failed to produce evidence to sustain an award of damages in any amount other than nominal.