Mary E. SIMMS, et al., Appellants,

v.

LAKEWOOD VILLAGE PROPERTY OWNERS ASSOCIATION, INC., et al., Appellees.

No. 13–93–382–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 2, 1995.

Rehearing Overruled March 9, 1995.

Denis A. Downey, Downey & Sullivan, Brownsville, for appellants.

Jeffrey D. Roerig, Roerig, Oliveira & Fisher, Brownsville, for appellees.

Before DORSEY, DALLY[1] and SMITH,[2] JJ.

## OPINION

SMITH, Justice (Assigned).

Subdivision property owners[3] filed two separate law suits against the appellee, Lakewood Property Owners Association, Inc., to enjoin enforcement of restrictive covenants and assessment of fees, declare the covenants void, and ask for compensatory and punitive damages and attorneys fees. The association answered and countersued for delinquent assessment fees, interest, and attorneys fees. The two causes of action were consolidated, and in a non-jury trial, the court held the subdivision covenants, conditions, and restrictions to be valid and enforceable against

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

2. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

3. For purposes of convenience, we divide the property owners into two groups. The first group of property owners purchased their property before the recordation of the restrictive cov-

enants and are: Harold and Laurette Anderson, Robert L. and Marjorie E. Ehrhardt, Frank M. and Elizabeth A. Hunt, Eldon P. and Anita E. Jones, Earnest M. and Sarah M. Reed, William and Mary E. Simms. The second group are property owners who purchased their property after the recordation of the restrictive covenant and are: Marjorie E. Bunting, Robert and Virginia Follman, Margaret J. Froelich, Charles W. and Ida A. Guier, Jack and Nora McCleery, C:V. and Lina R. Reed, Frederick and Harriet Schmid, Melvin P. and Ruby P. Williams.

all the plaintiffs. The court awarded judgment against named plaintiffs for specific amounts of delinquent assessment fees, plus interest and attorneys fees.

In six points of error the plaintiffs, appellants herein, attack the trial court's findings, conclusions of law, and holdings.

To better understand the issues in this appeal, we set forth a history of the facts leading to this litigation.

In October 1983, a developer filed in Cameron County, Texas an amended map for a subdivision to be named Lakewood Village, Unit 1, "A Planned Development District." This was to be a subdivision for mobile homes, modular homes, and recreation vehicles.

In January 1984, the developer commenced selling lots in the subdivision. On the face of each contract of conveyance was typed, "purchaser has read and accepted the restrictions, rules, regulations and property owner's responsibilities, a copy of which is attached hereto." The attachment had a provision for the payment of annual assessments, payable monthly, to cover expenses incurred in maintaining certain facilities common to owners in the subdivision.

In that same year, the developer requested the homeowners to form an advisory board to advise and assist him in the management of the subdivision. The advisory board was formed and not long thereafter, began to handle the collection of assessment fees and the management of common areas, i.e. clubhouse, pool, shuffleboard courts, two lakes, etc.

In February 1987, the restrictive covenants of the subdivision were recorded and in November of that year the name of the advisory board was changed to the Lakewood Village Property Owners Association.

In January 1988, the Harlingen National Bank took over the ownership of the subdivision after the developer advised the bank, which bank had financed the development of the Lakewood subdivision, that he was "all done". Several days later on January 11, the bank informed the property owners association that it had taken over the ownership of the subdivision. It also offered the board of the association the management and ownership of the property in the subdivision known as the "common areas."

On January 20, after prior notice to the subdivision property owners of a called general meeting, the property owners accepted the bank's offer by a 45 to 6 vote.

Shortly thereafter, the homeowners association applied for incorporation and on April 3, 1988, the Articles of incorporation were signed. An election was called, and new officers and a board of directors were elected for the corporation.

In 1989, a lawsuit was filed by a homeowner against the homeowner's corporation alleging that assessments were being made incorrectly. He alleged that the covenants, conditions, and regulations of the subdivision required assessments against each lot and that some owners whose residences were on two or more lots were only being assessed for one lot. The association contested the suit, but in January 1990, an agreed judgment was entered requiring the association to make assessments against each lot as long as the original covenants, conditions, and restrictions were in effect.

In February 1990, the corporation commenced making its monthly assessments against each lot. This new method of assessment caused dissatisfaction among some of the homeowners and apparently brought about the present litigation.

Appellant's contentions are basically divided into four categories, (1) the homeowners' corporation was illegal and void because it was not formed in accordance with the covenants, (2) the association had no authority to accept the management and ownership of the common areas because it did not comply with the covenants, (3) the association had no authority to levy assessments because the declarant bank had not given up its authority to assess, and (4) the appellants who purchased their property prior to the recordation of the covenants were not liable for assessments or attorney fees because they had no actual notice of the covenants.

■ We first note that there is no contention that the covenants involved are ambigu-

ous. Thus, there being no ambiguity, construction of the written covenants in the present case is a question of law for the court. *Westwind Exploration, Inc. v. Homestate Savings Association,* 696 S.W.2d 378, 381 (Tex.1985); *Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

In their first point of error, appellants contend that the corporate appellee is not the entity contemplated by the covenants and the trial court erred in so holding. It is uncontested that it was the intent of the developer (declarant in the covenants) that at some period in time, either before all lots were sold or after all lots were sold, the developer would transfer the management and ownership of the common areas from himself to a property owners association.

Article VIII of the covenants entitled "Management of Subdivision" sets forth who shall have the responsibility and authority to manage the subdivision. The following portions of Article VIII are pertinent to our factual situation:

> Section 8.1 DECLARANT shall have responsibility and the sole authority to prescribe Rules and Regulations covering use of the COMMON AREAS, streets, utilities and any other portions of the subdivision until such time as a Property Owners' Association is formed as hereinafter provided.
>
> Section 8.2 When all of the lots in the subdivision (including any future additions thereto) are sold, the management of the COMMON AREA and all rights and duties of DECLARANT herein shall be assumed by the Property Owner's Association.
>
> Section 8.3 The Property Owners' Association shall be formed according to By-Laws and Regulations to be adopted by a majority of the OWNERS of lots with the OWNER OR OWNERS entitled to one (1) vote for each lot owner.
>
> Section 8.5 Should DECLARANT elect to form a Property Owners' Association prior to the sale of all of the lots as herein provided, DECLARANT may submit By-laws and Regulations to the OWNERS of the lots at that time and such Associations may be formed by a majority vote of the

OWNERS prior to the sale of all lots by DECLARANT.

Because it is uncontested that all lots had not been sold when this case was heard by the trial court, and because section 8.5 addresses that factual situation, we compare the terminology and verbage used therein with that used in the other sections.

In section 8.5 the word "may" is used two times to indicate action by the parties. In sections 8.1, 8.2, and 8.3, the word "shall" is used to indicate action by the "Declarant" and "Property Owners Association."

■ The word "may" has been defined as (1) have the ability to, (2) be free, (3) used to indicate possibility or probability. Merriam–Webster's Collegiate Dictionary 718–719 (10th ed. 1994).

■ As a general rule the word "may" will not be treated as a word of command unless there is something in context or subject matter to indicate that it was used in such sense. *Bloom v. Texas State Bd. of Examiners of Psychologists,* 475 S.W.2d 374, 377 (Tex.Civ. App.—Austin 1972), *rev'd on other grounds,* 492 S.W.2d 460 (Tex.1973). In reversing *Bloom,* the Texas Supreme Court said "The correct meaning of the word 'may' is ... discretion." *Bloom v. Texas State Bd. of Examiners of Psychologists,* 492 S.W.2d 460, 462 (Tex.1973).

■ The word "shall" in its common usage has been defined as (1) will have to (2) used to express a command ... (3) used to express what is inevitable. Merriam–Webster's Collegiate Dictionary 1075–76 (10th ed. 1994). In law, the word "shall", as used in statutes, contracts or otherwise, generally means "imperative" or "mandatory." Black's Law Dictionary 1233 (5th ed. 1979).

■ The above definitions of the words "may" and "shall" are mere general guidelines because they must be read in context of the written instrument where they are used to ascertain the true intention of the party or parties. *See, Garcia v. RC Cola, 7–Up Bottling Co.,* 667 S.W.2d 517, 520 (Tex.1984).

■ There is no question about who had the covenants prepared or who chose the

terminology, therein; it was the developer J.C. Loehr. Loehr is the "declarant" in the covenants and could have chosen to use the word "shall" in section 8.5, but he did not. Instead, he elected to use the word "may", which indicates to us that he wanted to have discretion in deciding when he would relinquish the management and ownership to a property owners association. Furthermore, he left discretion in how the homeowners association would be created by stating "... such association may be formed by a majority vote of the owners." By the use of the word "may" in this covenant, the declarant chose not only not to bind himself but also not to bind the property owners to one method and only one method of forming a property owners association prior to the time all lots in the subdivision had been sold. In other words, he left himself the discretion in section 8.5 to cover any circumstances that might arise. This same discretion became the bank's when the developer took bankruptcy and the bank foreclosed its lien. The appellants have not challenged the bank's right or authority to be the successor in the covenants. Under these facts, we hold that the bank had the discretion and authority created by the covenants in section 8.5 to select the appellee property owners association to succeed the bank as declarant in the covenants notwithstanding the fact that a majority of the homeowners had not participated in the vote.

Appellants next contend that the association had no authority to accept the management and ownership of the common area because the acceptance was not in compliance with the covenants, specifically section 8.3.

As heretofore pointed out, section 8.3 is not applicable until all lots are sold. Section 8.5 covers our factual situation because all lots had not been sold and that section gives the declarant as well as the homeowners and the association discretion in their actions.

Using that discretion the bank/declarant notified the homeowners association of its desire to transfer the management and ownership to the association. The minutes of the association show that it gave notice to the homeowners and that a meeting was held on January 20, 1988. The covenants state that an association *may* be formed by a majority vote of the homeowners. This requirement is not mandatory. Fifty-one owners attended that meeting, and voted 45 to 6 for the association to accept the management and ownership of the common areas. The number of lots owned by those who voted is not shown, but the association's minutes show that fifteen of the appellants attended the January 20th meeting. Because there were only six negative votes to accept the bank's offer, at least nine of the appellants voted for acceptance of the bank's offer.

Those minutes also show that appellant, Robert L. Ehrhardt, not only attended the meeting but also made the motion to accept the bank's offer of transfer of the management and ownership of the common areas. Ehrhardt was a signatory to the "Articles of Incorporation" for the homeowners' corporation. He also was on the original board, and later served as president of the association.

Other appellants not only voted to accept the bank's offer, but after incorporation regularly attended meetings, served on the association's board, and served on various association committees.

As far as we can tell from the association's minutes, some of which are illegible, no owner of the subdivision challenged the association's right to accept the management of the common area until approximately two years after the association's acceptance, the method of assessments was changed, and this lawsuit was filed.

Appellees contend that appellants should be estopped or be bound by their actions in participating in the formation of the corporate association and the association's actions.

■ The facts as set forth above show that the appellants either participated in or acquiesced in the board's vote to accept the management and ownership of the common areas. Acquiescence is some evidence of ratification. *Jamail v. Thomas*, 481 S.W.2d 485 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.). Ratification occurs when a party recognizes the validity of a contract by acting under it or affirmatively acknowledging it. *Zieben v. Platt*, 786 S.W.2d 797,

802 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Wetzel v. Sullivan, King & Sabom,* 745 S.W.2d 78, 81 (Tex.App.—Houston [1st Dist.] 1988, no writ). Ratification may be express or implied. *Petroleum Anchor Equipment v. Tyra,* 419 S.W.2d 829, 834 (Tex.1967); *Diamond Paint Company of Houston v. Embry,* 525 S.W.2d 529, 535 (Tex. Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). Thus, those appellants who voted for the acceptance of the bank's offer to transfer authority to the association, or participated in the creation of the corporation, or served as officers, or served as board members, expressly ratified the association's authority to accept the management and ownership of the common areas. The balance of the appellants by working on committees, or by attendance at association meetings, or by acceptance of the board's actions in managing the common areas, or by payment of assessments fixed by the board, for approximately two years, impliedly recognized, acknowledged, and ratified the board's authority to accept the management and ownership of the common areas.

We hold that the appellants are bound by their actions and ratified the association's acceptance of the management and ownership of the common areas.

Appellants next contend that the association has no authority to levy assessments because the declarant bank did not give up its authority to assess.

It is uncontested that the bank did not give up all its rights of ownership in the subdivision because it still owned lots in the subdivision. However, it was the bank acting as "declarant" which transferred its right to be "declarant" to the association. The minutes of the association show that the management and ownership of the common areas were offered by the bank and accepted by the association. This evidence along with the fact that the bank immediately made the offer of transfer after it foreclosed its lien on the property and never participated in the management or affairs of the subdivision, shows that the bank did not want the responsibility of being declarant and transferred it to the association.

Section 4.4 of the covenants gives the declarant the right to fix assessments and in section 4.1 each owner agrees to pay the assessment and gives the declarant a continuing lien upon the property upon which the assessment is made. Section 4.5 sets forth the remedies available to the declarant if assessments are not paid, including the right to foreclose or take legal action.

 We hold that the bank's actions in transferring the management and ownership of the common areas to the association along with the authority given to the declarant in sections 4.2, 4.4, and 4.5 of the covenants, gives the association the authority to fix and collect the assessment on each lot in the subdivision. Appellants' first point of error is overruled.

Appellants allege in their second and third points of error that the trial court erred in finding that the "Declaration of Covenants, Conditions, and Restrictions" run with the land and are applicable to all lots in the subdivision.

The essence of appellants' claim is that the subdivision plan was never implemented or that the plan was abandoned almost from the inception. Appellants have itemized numerous types of restriction violations such as: brick homes in areas restricted to mobile or modular homes; mobile homes located in recreational vehicle areas; waiver of assessments; failure to submit plans to the architectural committee; and erection of buildings across lot lines.

Appellants have stated that the covenants are unambiguous; thus, we look at the specific applicable portions of the declarations to address the appellants' contention.

In the unnumbered initial declarations of the covenants, the developer, J.C. Loehr, states that he is the declarant in the covenants; that he is the owner of Lakewood Subdivision property; that he declares such property to be subject to the "easements, restrictions, covenants and conditions ... which shall run with said property." Again, in section 9.3 the covenant states, "The covenants and restrictions of this declaration shall run with and bind the land for a period of 30 years...."

■ We agree with the appellants that there is no ambiguity in the two aforementioned provisions of the covenants. Contrary to appellants' contention that the covenants do not run with all the land or all the lots, we are of the opinion that the covenants are explicit and state that the covenants run with all the property in the subdivision, and we so hold.

Appellants also assert that because of the numerous violations of the restrictive covenants, the covenants have been abandoned and are void and unenforceable.

We perceive this assertion by the appellants not to be just an attack on a specific restriction or on the authority of the association but an attempt by appellants to have the entire "Declaration of Covenants, Conditions and Restrictions" declared to be null and void because of waiver or abandonment.

■ The Texas Supreme Court has given us guidelines to be applied when an attack has been made upon subdivision restrictions. If benefits of the original plan can be realized, restrictions should be enforced. *Cowling v. Colligan,* 158 Tex. 458, 312 S.W.2d 943, 946 (1958). Equities favoring a lot owner must be weighed against equities favoring other lot owners who have acquired their property on the strength of restrictions. Id.

■ The court has also set forth two factual situations where enforcement of restrictions may be refused: 1) where lot owners have acquiesced in such substantial violations within the restricted areas as to amount to abandonment of the covenant or waiver of the right to enforce it; or 2) there has been such a change in conditions in the restricted area or surrounding it that it is no longer possible to secure to a substantial degree the benefits sought to be realized through the covenants. Id.

In attempting to put our factual situation in perspective, we reiterate a few facts. The Lakewood Village subdivision consists of 190 lots. Most of those lots had been sold at time of trial. Appellants are twelve couples and two individuals who own lots in the subdivision. The developer commenced selling lots in early 1984. This suit was filed in

December 1990, and trial commenced in March 1993. A prior judgment in 1990 required the association to levy assessments per lot rather than by home. Some homes had been built on two or more lots. The stated purpose of the development was to create a subdivision restricted basically for private, adult use in mobile homes, modular homes, and recreational vehicles, subject to the covenants.

■ There is evidence in the record that the developer in his promotional literature used the restrictions to attract potential buyers. There is evidence that some lot owners purchased their property because of, and in reliance on, the fact that this was a restricted subdivision. There is also evidence that the general scheme and plan of the subdivision has been followed. Further the record shows that the association, before and after its incorporation, met regularly, maintained the common areas, fixed the assessment rate, collected the assessments, paid the taxes on the common area property owned by the association, paid any other debts incurred in maintaining the common area property, and appointed committees to assist the board and officers of the association in conducting the business of the association.

Appellants allege that the association is the culprit in not enforcing the restrictions. What appellants do not mention is that the covenants, in section 9.1, state ". . . any owner [in the subdivision] shall have the right to enforce by a proceeding at law or in equity, all restrictions, conditions, covenants, . . . imposed by the provisions of this declaration."

In fact, section 9.1 was utilized in a law suit in 1990 by a lot owner to obtain a construction of the covenants to determine the proper method of fixing assessments. It is manifest that all lot owners as well as the association had the right to enforce the covenants. The 1990 suit is evidence that lot owners, other than the appellants, consider the covenants to be valid and enforceable.

Section 9.1 also contains the following statement: "Failure by declarant [association herein] or by any owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to

do so hereafter." This statement apparently was included in the covenant to protect the lot owners and association from any claims that the covenant had been waived or abandoned because of a failure to prosecute prior violations.

The trial court found that none of the acts of the association constituted a waiver or abandonment of the covenants, conditions or restrictions or the general plan or scheme of the subdivision.

In balancing the equities between violations of covenants that have occurred and the harm incurred by the appellant lot owners as a result of those violations, as opposed to the harm that would occur to all lot owners if the covenants were held to have been abandoned or waived; the equities weigh heavily in favor of upholding the validity of the covenants. To hold otherwise would be an injustice to the many lot owners who purchased their property in reliance upon the protection afforded by the covenants and are still relying upon that protection.

We agree with the trial court's finding that the acts of the association did not constitute a waiver or abandonment of the entire declaration of covenants, conditions, and restrictions of the subdivision. We hold the covenants to be valid and enforceable.

Appellants' points of error two and three are overruled.

Appellants' fourth point of error asserts the trial court erred in not awarding appellants damages and attorneys fees because of violations of the covenants that have occurred in the subdivision.

Appellants argue that whether the association was a valid or invalid corporation is not determinative of their right to damages and attorneys fees. They reason that the association, if valid, had a duty, as opposed to a right, to enforce all violations of any covenants, conditions or restriction set forth in the declaration of covenants. On the other hand, they argue, that if the association was found not to be a valid corporation, then appellants reason that they are entitled to damages and attorney fees for the association's actions as a "usurper" and for its illegal and wrongful acts.

We disagree with appellants' assertion that the association had a duty to enforce violations of the covenants. Section 9.1 of the covenants also states, "Declarant [association] or any owner shall have the right to enforce. . . ." The terms "right" and "duty" are not synonymous, but even if they were, appellants, as owners, would have the same duty to enforce the covenants as the association. Thus, the association and appellants would each have the same cause of action against each other, and such a suit would have an absurd result and serve no useful purpose. We find no merit to appellants' assertion that the trial court erred in not awarding them damages.

Appellants also contend that the trial court erred in not awarding them attorneys fees. In the present suit, the appellants did not prevail in their suit against the association or in the associations' counter-claims against appellants. However, whether a party prevailed or lost is not solely in itself determinative of entitlement to attorneys fees. Various intangibles are involved in a trial court's consideration in awarding or not awarding attorney fees. *Mack v. Moore,* 669 S.W.2d 415, 420 (Tex.App.—Houston [1st Dist.] 1984, no writ). In the trial court, in non-jury cases, an award of attorney fees involves the sound discretion of the trial judge. *Stegall v. Stegall,* 571 S.W.2d 564, 566 (Tex.Civ.App.—Fort Worth 1978, no writ). The appellate courts have uniformly held that any award of attorney fees, pursuant to statute or common law, is within the discretion of the trial judge and absent a showing of abuse of discretion by the trial judge, a judgment will not be reversed. *Fowler v. Stone,* 600 S.W.2d 351, 353 (Tex. Civ.App.—Houston [14th Dist.] 1980, no writ).

We have reviewed the record and based on the evidence contained therein; we are of the opinion that the original plan of the subdivision is enforceable and that the trial court did not abuse its discretion in refusing to award the appellants damages and attorneys fees.

Appellants' fourth point of error is overruled.

In appellants' fifth and sixth points of error, they allege that the trial court erred in holding that those appellants who purchased their property prior to the recordation of the covenants, had actual notice of the covenants and were liable for maintenance fees and attorneys fees.

Appellants contend that there was no evidence or insufficient evidence for the court to hold they had actual notice of the covenants because they all testified that the covenants were not attached to their contracts when they purchased their property and the covenants had not been recorded. One of the appellants, Frank Hunt, testified he worked for the developer selling lots in the subdivision and was building brick homes in the subdivision at the time. He was aware of the covenants, but concluded that the covenants had been waived.

Contrary to appellants' contention, there is evidence that they had actual notice of the covenants. For instance, the developer had filed a map showing the general scheme and plan of the subdivision and used brochures which contained the general plan and scheme. Appellant Hunt testified that he had seen the covenants. Appellant Anderson stated that prior to his purchase of property in the subdivision, he was aware of the general plan and scheme of the subdivision. In addition, on the face of each of appellants' contract to purchase property in the subdivision, prior to recordation of the covenants and thereafter also, was printed the following statement, "Purchaser has read and accepted the restrictions, rules, regulations, and property owners responsibilities, a copy of which is attached hereto." There is also testimony in the record that appellants had read and understood their purchase money contracts. Too, there is evidence that some of the appellants after purchase of property and prior to recordation of the covenants served as advisory board members and later officers of the association which fixed and collected assessments and attempted to enforce the restrictive covenants set forth in the declaration of covenants. Furthermore, all appellants paid their assessment fees as directed by the covenants and recognized that there was a general plan and scheme to the subdivision prior to recordation of the covenants.

Generally, the deed alone must be looked at to determine the rights of the parties. *Alvarado v. Bolton,* 749 S.W.2d 47, 48 (Tex.1988). However, a purchaser is bound by restrictive covenants when he has actual or constructive notice. *Id.*

Actual notice embraces those things of which the one sought to be charged has express information and those things which a reasonable inquiry and exercise of means at hand would have disclosed. *Woodward v. Ortiz,* 150 Tex. 75, 237 S.W.2d 286, 289 (1951). Actual notice is a question of fact. *O'Ferral v. Coolridge,* 149 Tex. 61, 228 S.W.2d 146, 148 (1950). There are no fixed rules of what facts or circumstances will be sufficient to make a finding of actual notice. Each case must be governed by its own circumstances. *Id.*

Where a general plan of development has been maintained, accepted, relied upon, and acted upon, the plan is binding and enforceable so long as the grantee took with notice or with knowledge of the general plan. *Selected Land Corp. v. Speich,* 702 S.W.2d 197, 199 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Although the appellants assert that the covenants were not attached to their purchase contracts and that they had no knowledge of the covenants and restrictions contained therein, the trial court found that appellants had actual knowledge of the covenants. Based on the facts of this case, it appears that the trial court was of the opinion that appellants' actions spoke louder than their words. We agree.

Applying the general rule of law pertaining to "actual notice", we find that all appellants' contracts stated that the purchaser had read and accepted the restrictions, rules, regulations and property owners responsibilities. We find that even if, as the appellants state, a copy of the covenants was not attached, appellants were put on notice of such covenants and that a reasonable inquiry would have afforded them the specifics of the covenants. There is nothing in the record to

indicate that any appellant ever asked for a copy of the covenants even though they testified that they had read their contracts which mentioned the covenants. There is also evidence that those appellants who had purchased their property before the recordation of the covenants knew that there was a general plan and scheme for the subdivision, participated in the affairs of the appellee association, and paid the assessments required by the covenants. This evidence makes it apparent that the appellants had notice of the covenants, and relied and acted on the covenants by participating in, accepting, and enforcing the covenant requirements. Under such circumstances, we hold that there is sufficient evidence to support the trial court's findings that appellants had actual knowledge of the covenants. Because we have previously held that the covenants are valid, we further hold that the trial court did not err in awarding judgment against the specified appellants for delinquent maintenance fees and attorneys fees.

Appellants' fifth and sixth points of error are overruled.

The judgment of the trial court is affirmed; costs of appeal are charged against appellants.